**FILED**
**CLERK**

11:49 am, Nov 15, 2018

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
JOHN LAFACE,

     Plaintiff,

   -against-

EASTERN SUFFOLK BOCES; BOARD OF TRUSTEES, EASTERN SUFFOLK BOCES; DR. JULIE DAVIS LUTZ, in her official capacity as COO, EASTERN SUFFOLK BOCES, and individually; DR. R. TERRY McSWEENEY, in her official capacity as Assistant Superintendent for Human Resources, EASTERN SUFFOLK BOCES, and individually; JILL DIAMOND, in her official capacity as School Personnel Officer, EASTERN SUFFOLK BOCES, and individually; KEITH ANDERSON, in his official capacity as Supervisor, EASTERN SUFFOLK BOCES, and individually; THOMAS BILKA, in his official capacity as Supervisor, EASTERN SUFFOLK BOCES, and individually,

     Defendants.
-------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
2:18-cv-01314 (ADS)(AKT)

**APPEARANCES:**

**Harriet A. Gilliam, Esq.**
*Counsel for the Plaintiff*
21 West Second Street
Riverhead, NY 11901

**Sokoloff Stern LLP**
*Counsel for the Defendants*
179 Westbury Avenue
Carle Place, NY 11514
   By:  Adam I. Kleinberg, Esq.,
      Chelsea Weisbord, Esq., Of Counsel

**SPATT, District Judge**:

On March 1, 2018, John Laface ("Laface" or the "Plaintiff") commenced this action against Eastern Suffolk BOCES ("BOCES"), the Eastern Suffolk BOCES Board of Trustees (the "Board"), Dr. Julie Davis Lutz ("Lutz"), Dr. R. Terry McSweeney ("McSweeney"), Jill Diamond ("Diamond"), Keith Anderson ("Anderson") and Thomas Bilka ("Bilka") (together, the "Defendants"), in response to his involuntary transfer in October of 2016. The Plaintiff alleges numerous federal and state causes of action, namely violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 US.C. § 621 *et seq.*; Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.*; the First Amendment; the Due Process Clause of the Fourteenth Amendment; and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296 *et seq.*

Presently before the Court is a motion by the Defendants, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6), seeking to dismiss the complaint for failure to state a claim upon which relief may be granted.

For the following reasons, the Defendants' motion to dismiss is granted in part.

## I. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Plaintiff's complaint, and for the purposes of the instant motion, are construed in favor of the Plaintiff.

Laface is currently employed by BOCES as a Custodial Worker I. For the last 30 years, he has been assigned to the Gary D. Bixhorn Technical Center ("BTC") at 350 Matra Avenue in Bellport, New York. During his tenure at BTC, Laface worked from 7:00 a.m. to 3:00 p.m. during the workweek and was supervised by Anderson and Bilka. The Plaintiff belongs to the United

2

Public Services Employees Union (the "Union") and his employment is governed by a collective bargaining agreement (the "CBA"). At an unknown time, the Plaintiff developed a condition that causes stress and anxiety and prevents him from travelling further than ten miles from his home. Laface had previously informed Anderson as well as BOCES' Human Resources Department of his travelling restriction prior to the events detailed below.

While the Plaintiff's complaint makes it clear that the Plaintiff was involved in a series of complaints and grievances, the nature and timeline of the specific complaints is ambiguous. According to the Union, the Plaintiff has actively advocated for himself and the Union for over 25 years and filed 15 separate grievances since 2014. These were filed in connection with "change in shift hours, non-bargaining unit members performing bargaining unit work, allowing district employees and/or students into the building without a custodian present … and other … matters." *See* Docket Entry ("DE") 10-9.

Relevant to the instant action, beginning in 2015, the Plaintiff began making complaints to Lutz, the Chief Operating Officer of BOCES, and the Board regarding alleged improper and wasteful expenditures of public funds, misuse of public funds, and contracting practices. The Plaintiff also alleges that he was involved in a grievance filed by the Union regarding harassment and discrimination that he purportedly faced on July 7, 2014. The letter from Laface's union depicts an issue with Anderson that alleges bullying, intimidation and the threat of retaliation. *See* DE 10-8 at 1-2. The Plaintiff also filed a grievance with the Public Employment Retaliations Board ("PERB") on July 16, 2015 regarding the use of contractors without custodial employees present. The Plaintiff was scheduled to testify at the related arbitration hearing scheduled for November 2, 2016. This arbitration involved the use of exterior contractors without custodians present. *See* DE 10-9. Separately, the Plaintiff seemed to have filed an internal complaint with

BOCES regarding his treatment in the workplace, alleging harassment and discrimination regarding the Plaintiff's stated disability. There is no timeline provided for this factual assertion and it is unclear if this complaint is separate from the Union's grievance that resulted from the July 7, 2014 incident.

On or about October 17, 2016, Anderson and Bilka notified the Plaintiff by letter that he was reassigned to the H.B. Ward Campus ("HBW") in Riverhead, New York, effective on October 28, 2016. The letter did not provide an explanation as to why BOCES was transferring Laface. HBW is located more than ten miles from the Plaintiff's residence. The CBA permits involuntary transfers with one-week's prior notice. *See* CBA, DE 10-2 at 27-28. In pertinent part, it states: "Except for emergencies and temporary assignments, a permanent unit member may not be transferred to another shift or from one building to another until prior notice to and discussion with the unit member has taken place. A one week notice for permanent transfers is required." *Id*. The Plaintiff was provided nine days notice of the transfer to HBW.

Laface's impending transfer caused him enormous anxiety and prevented him from being able to continue to work. Unable to drive to HBW without his condition flaring up, the Plaintiff began a period of sick leave beginning on October 28, 2016. On or about November 22, 2016, the Plaintiff received a letter from Diamond, the School Personnel Officer, which directed him to report to BOCES Human Resources Department for a meeting on November 28, 2016. Laface's last day of documented sick leave was November 27, 2016, the day before the meeting. He reported to the November 28, 2016 meeting with Diamond and requested that she "make a reasonable accommodation for his documented disability." She "refused to engage in the required interactive process … to identify a reasonable accommodation for Plaintiff's travel/driving restrictions and stated to Plaintiff that [BOCES] was not going to accommodate him." Diamond

instructed the Plaintiff to have his physician complete a number of forms regarding his disability. Laface presented the forms to his physician who completed them and returned them to Diamond. After the November 28, 2016 meeting, the Plaintiff received correspondence from Marysue Dileva informing him of his rights and responsibilities under the Family Medical Leave Act ("FMLA").

Diamond again met with the Plaintiff on December 23, 2016, along with his union representative. At that meeting, Diamond purportedly accused Laface of being uncooperative in refusing to answer her questions and informed him that he was to report to HBW using public transportation rather than remain at BTC. Following the December 23, 2016 meeting, the Plaintiff was placed on paid administrative leave. Both the Plaintiff and his union representative reached out to Diamond to discuss his administrative leave. Ultimately, the Plaintiff never reported to his assignment at HBW. On December 21, 2016, the Union filed a complaint with PERB contending that the Plaintiff's transfer was in retaliation for the Union's July 16, 2015 grievance involving exterior work on the building. *See* DE 9.

On or about January 19, 2017, the Plaintiff received a letter from Diamond ordering him to report to Jefferson Academic Center ("JAC") for a temporary work assignment beginning on February 1, 2017. The letter further informed the Plaintiff that he was assigned to work from 10:00 a.m. to 6:00 p.m. at JAC during the regular workweek and indicated that JAC is less than ten miles from the Plaintiff's residence. *See* DE 10-7, at 2. The Plaintiff began working at JAC as instructed and continues to report to this temporary work assignment, which he contends involves different work and added responsibilities, including additional manual labor.

Throughout this time there were vacant custodial positions at BTC, including the Plaintiff's original position.

## II. DISCUSSION

### A. STANDARD OF REVIEW: FED. R. CIV. P. 12(B)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See, e.g.*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The Second Circuit has expounded that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule 8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home*

*Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555). "In ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## B. CONSIDERATION OF MATERIALS OUTSIDE THE COMPLAINT

The Defendants attach multiple exhibits to their motion to dismiss: (1) the complaint; (2) a copy of the CBA; (3) the transfer letter, dated October 17, 2016; (4) a letter from Diamond dated November 22, 2016; (5) a medical questionnaire completed by the Plaintiff's physician; (6) a Notice of Eligibility and Rights & Responsibilities; (7) a letter from Diamond, dated January 19, 2017; (8) a letter from the Union, dated August 12, 2014; and (9) a copy of a PERB complaint, dated December 21, 2016.

"[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Giugliano v. F3² Capital Partners, LLC,* No. 14-cv-7240, 2015 WL 5124796 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.) (internal citation and quotation marks omitted); *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (noting the Second Circuit has recognized "exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint"). In adjudicating this motion, the Court is permitted to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public

disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Envtl. Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006)); *accord Healthnow New York, Inc. v. Catholic Health Sys., Inc.*, No. 14-cv-986S, 2015 WL 5673123 (W.D.N.Y. Sept. 25, 2015); *Oberstein v. SunPower Corp.*, No. 07-cv-1155, 2010 WL 1705868, at *3 (E.D.N.Y. Apr. 28, 2010).

The Court finds that (1) a copy of the CBA; (2) the transfer letter, dated October 17, 2016; (3) a letter from Diamond dated November 22, 2016; (4) a medical questionnaire completed by the Plaintiff's physician; (5) a Notice of Eligibility and Rights & Responsibilities; and (6) a letter from Diamond, dated January 19, 2017 are incorporated by reference and integral to the complaint. The Plaintiff specifically mentions these documents throughout the complaint and relied on their terms or contents while drafting the complaint. *See, e.g.*, Compl. ¶¶ 31 ("On or about October 17, 2016, Defendants Keith Anderson and Thomas Bilka issued Plaintiff a memo reassigning him and directing him to report to the [HBW] Campus in Riverhead, New York, effective October 28, 2016."), 40 ("Defendant Jill Diamond sent Plaintiff a letter dated November 22, 2016, directing him to report to [BOCES] Human Resources for a meeting on November 28, 2016, upon his return to work."), 44 ("[A]t the November 28, 2016 meeting, Defendant Diamond continued and persisted in questioning Plaintiff's disability and gave him forms for his doctor to complete, although his disability had previously been documented."), 46 ("Plaintiff took the forms and presented them to his doctor who completed them for submission to Defendant Diamond."), 47 ("Following the

November 28, 2016 meeting with Defendant Diamond, Paintiff received a correspondence from Marysue Dileva, employee benefits supervisor for [BOCES], regarding rights and responsibilities under the [FMLA].”), 60 (“Following Plaintiff's numerous requests to Diamond about his administrative leave status, on or about January 19, 2017, Plaintiff received a letter from Defendant Diamond, directing him to report to [JAC] for a temporary reassignment, to work from 10:00 a.m. to 6:00 p.m.”).

These allegations indicate that the Plaintiff “‘relie[d] heavily upon [these documents’] terms and effect,’ thereby rendering the document[s] ‘integral’ to the complaint.’” *DiFolco*, 622 F.3d at 111 (internal citations omitted). *See, e.g.*, *Gesualdi v. Fazio*, No. 16-CV-5209, 2017 WL 8794775, at *1 n.2 (E.D.N.Y. Dec. 12, 2017), *report and recommendation adopted sub nom. Gesualdi v. Difazio*, No. 16-CV-5209, 2018 WL 1202640 (E.D.N.Y. Mar. 8, 2018) (ruling that “because the CBAs between [the company] and [the union] are integral to the complaint and referenced therein, the Court can consider them”); *Pearson Capital Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 402 (S.D.N.Y. 2015) (“The Complaint thus ‘relies on the terms and effect’ of the [letters], rendering those documents ‘integral’ to the Complaint and appropriate for consideration in adjudicating a motion to dismiss.” (internal citations omitted)); *Johnson v. Levy*, 812 F. Supp. 2d 167, 177 (E.D.N.Y. 2011) (Spatt, J.) (considering letters because “they were incorporated by reference and … integral to the complaint”).

Further, the Court also finds that (1) a letter from the Union, dated August 12, 2014; and (2) a copy of a PERB complaint, dated December 21, 2016 were relied upon in framing the complaint. These documents are attached to and discussed in the Defendants’ motion to dismiss. While they were not specifically referenced, the complaint makes it clear that the Plaintiff had notice of and relied on these documents when filing suit. *See, e.g.*, Compl. ¶¶ 4 (“Mr. Laface has

been retaliated against, harassed and targeted by [BOCES], its agents and employees …"); 33 ("The time of the notification of Plaintiff's reassignment was just a few days before Plaintiff was scheduled to testify at an arbitration on behalf of the union related to a grievance that had been filed by the union on July 16, 2015, alleging harassment and discrimination.") 34 ("Plaintiff had also filed an internal complaint with [BOCES] under its anti-bullying policy …"); 119 ("Plaintiff had filed a grievance, through the union, to contest action by [BOCES], which was in violation of the union contract …").  As such, the Court will consider these documents for the purposes of this motion. *See, e.g.*, *Williams v. Potter*, No. 06 Civ. 8258, 2007 WL 2375818, at *1 (S.D.N.Y. Aug. 14, 2007) (considering a series of letters in deciding a motion to dismiss because "the Plaintiff had notice and relied upon [them] in framing his Complaint").

Accordingly, the Court will consider the above-mentioned documents for purposes of adjudicating the instant motion.

## C.  DISCRIMINATION CLAIMS

In his first, third, and fifth cause of action, the Plaintiff asserts that BOCES and the Board unlawfully discriminated against him, in violation of the ADA, the ADEA, and the Rehabilitation Act.

### 1.  The Americans with Disabilities Act & the Rehabilitation Act

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of his employment."  42 U.S.C. § 12112(a). Disability is defined in the statute as "(1) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; or (2) a record of such an impairment;

or (3) being regarded as having such an impairment." 42 U.S.C. § 12101(2). Claims alleged under the ADA and Section 504 of the Rehabilitation Act are analyzed identically. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

Disability discrimination is analyzed under the three-part, burden-shifting framework established in *McDonnell Douglas*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2d Cir. 2000) (ADA claims are evaluated under the *McDonnell Douglas* framework). To do so, first the Plaintiff must first establish a prima facie case of discrimination. If he does, the burden shifts to the Defendants to articulate a legitimate, non-discriminatory reason for their actions. The burden then shifts back to the Plaintiff to prove that discrimination was the true reason behind the Defendants actions. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) [his] employer is subject to the ADA; (2) [he] is disabled within the meaning of the ADA; (3) [he] is otherwise qualified to perform the essential functions of [his] job; and (4) [he] suffered an adverse employment action because of [his] disability." *Alexander v. DiDomenico*, 324 F. App'x 93, 95 (2d Cir. 2009) (citing *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004)).

"However, the survival of a complaint under Rule 12(b)(6) scrutiny in an employment discrimination case 'does not rest on whether it contains specific facts establishing a prima facie case under *McDonnell Douglas*.'" *Figueroa v. RSquared NY, Inc.*, 89 F. Supp. 3d 484, 489 (E.D.N.Y. 2015) (Spatt, J.) (quoting *Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F.Supp.2d 228, 236 (E.D.N.Y. 2011)); *Fanelli v. New York*, 51 F. Supp. 3d 219, 231 (E.D.N.Y. 2014) (Spatt, J.); *Friel v. Cty. of Nassau*, 947 F. Supp. 2d 239, 251 (E.D.N.Y. 2013) (Spatt, J.). "This is because, at the pleading stage, courts do not apply the *McDonnell Douglas* burden shifting test to analyze the

evidentiary support for the discrimination claims." *Figueroa*, 89 F. Supp. 3d at 489; *Fanelli*, 51 F. Supp. 3d at 231; *Friel*, 947 F. Supp. 2d at 251; *see also Gonzalez v. Carestream Health, Inc.*, 520 F. App'x 8, 9-10 (2d Cir. 2013) ("To survive a motion to dismiss, a complaint alleging workplace discrimination ... need not allege specific facts establishing a prima facie case of discrimination under McDonnell Douglas ....").

Instead, "[this Court] consider[s] only whether the complaint includes factual allegations sufficient 'to raise a right to relief above the speculative level.'" *Gonzalez*, 520 F. App'x at 10 (quoting *Twombly*, 550 U.S. at 555). "In other words, the Court asks only whether a plaintiff has pled a prima facie case, not whether a plaintiff has established that case. Thus, the standard is simply whether the plaintiff's complaint, construed liberally, satisfies the federal pleading requirements for a claim of discrimination." *Figueroa*, 89 F. Supp. 3d at 489; *Fanelli*, 51 F. Supp. 3d at 231 (same); *Friel*, 947 F. Supp. 2d at 251 (same); *see also Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) ("Plaintiffs need only comply with Rule 8(a)(2) by providing a short and plain statement of the claim that shows that plaintiffs are entitled to relief and that gives the defendants fair notice of plaintiffs' claims of age discrimination and the grounds upon which those claims rest."). In the causation context, this means the Plaintiff needs only allege a set of facts that it makes it "plausible" that the Plaintiff's disability was a "motivating factor" in the adverse employment action. *Fanelli*, 51 F. Supp. at 232.

To determine whether or not a plaintiff suffers from a disability, the Supreme Court compels district courts to follow a three-step process to conclude: "(1) whether plaintiff had an impairment; (2) whether the impairment affected a 'major life activity' within the meaning of the ADA; and (3) whether that major life activity was substantially limited by the impairment." *Mazza v. Bratton*, 108 F. Supp. 2d 167, 173 (E.D.N.Y. 2000) (citing *Bragdon v. Abbott*, 524 U.S. 624,

631, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998)); *Felix v. New York City Transit Auth.*, 324 F.3d 102, 104 (2d Cir. 2003) (same). If he fails to satisfy any of these three prongs, the Plaintiff's discrimination claim must be dismissed.

### a. Impairment

The Defendants contend that the Plaintiff's condition does not constitute a physical or mental impairment under the ADA. The Equal Employment Opportunity Commission defines "physical or mental impairment" as:

> (1) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or
>
> (2) any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 CFR § 1630.2(h). "'[G]reat deference' [is accorded] to the EEOC's interpretation of the ADA, since it is charged with administering the statute." *Francis v. City of Meriden*, 129 F.3d 281, 283 n.1 (2d Cir. 1997).

The Plaintiff alleges that he suffers from stress and anxiety that preclude him from driving more than ten miles from his home. "[S]tress and depression are conditions that may or may not be considered impairments, depending on whether these conditions result from a documented physiological or mental disorder." *Santos v. City of New York*, 01 Civ. 0120, 2001 WL 1568813, *4 (S.D.N.Y. Dec. 7, 2001) (quoting EEOC Technical Assistance Manual on the Employment Provisions (Title I) of the Americans With Disabilities Act § 2.1(a)(i), at II-3 (1992)). The Defendants contend that he suffers from job-related stress or anxiety. However, Laface describes his condition as more than just anxiety or stress resulting from his job. The complaint states that

13

the Plaintiff's driving restriction is due to his psychological disorder. He does not argue that this restriction is limited to work-related driving. At the pleading stage, Laface has successfully alleged that he suffers from an impairment within the meaning of the ADA.

### b. Major Life Activities

The Defendants further contend that Laface's impairment does not substantially limit a major life activity. "In deciding whether a particular activity is a 'major life activity,' [the Court] ask[s] whether that activity is a significant one within the contemplation of the ADA, rather than whether that activity is important to a particular plaintiff." *MacGovern v. Hamilton Sunstrand Corp.*, 170 F. Supp. 2d 301, 308 (D. Conn. 2001). "[T]he touchstone for determining an activity's inclusion under the statutory rubric is its significance." *Bragdon*, 524 U.S. at 638. "Major life activities" include "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working[.]" 29 C.F.R. § 1630.2(I)(i); *see also Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002) (major life activities are "those activities that are of central importance to daily life"). This list is illustrative, not exhaustive. *Bragdon*, 524 U.S. at 631. In this Circuit, courts have previously ruled that sitting, standing, sleeping, lifting and reaching are major life activities. *Colwell v. Suffolk Cty. Police Dept.*, 158 F.3d 635, 642 (2d Cir. 1998), *superseded by statute on other grounds by* 42 U.S.C. § 12102(3)(A).

The Plaintiff alleges that he is unable to drive or commute to a job that is further than ten miles from his residence. However, this Circuit has repeatedly held that driving is not a major life activity. *Capobianco v. City of New York*, 422 F.3d 47, 58 n.7 (2d Cir. 2005); *Usala v. Consol. Edison Co. of New York*, 141 F. Supp. 2d 373, 382 (S.D.N.Y. 2001) (finding that the Plaintiff's

driving limitations do not impeded a major life activity and noting that "the [Second Circuit] has held that driving is not a 'major life activity' under the ADA" (citing *Colwell*, 158 F.3d at 643)). Further, being unable to use public transportation as an alternative to driving does not rise to the level of a *major* life activity. This restriction more closely resembles the limitations found in the regulations or the jurisprudence of this Circuit which are not considered major life activities rather than those which have been found to qualify as such.

### c. Substantial Limitation

The final step in determining whether a plaintiff has a disability under the ADA is to find whether he has alleged that his impairment substantially limits any major life activities. *Bragdon*, 524 U.S. at 639; *see Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998) ("In assessing whether a plaintiff has a disability, courts have been careful to distinguish impairments which merely affect major life activities from those that substantially limit those activities."). "The need to identify a major life activity that is affected by the plaintiff's impairment plays an important role in ensuring that only significant impairments will enjoy the protection of the ADA." *Reeves v. Johnson Controls World Servs.*, 140 F.3d 144, 152 (2d Cir. 1998). As the Plaintiff has not successfully pled that his impairment limits a major life activity, the Court is unable to address this element.

### d. Regarded as Having an Impairment

The Court notes that the Defendants did not regard the Plaintiff as having a disability. A person is "regarded as having" an impairment if he or she "'establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental or impairment whether or not the impairment limits or is perceived to limit a major life activity.'" *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 141 (E.D.N.Y. 2015) (quoting

*Laurent v. G & G Bus. Serv.. Inc.*, No. 10-CV-4055, 2011 WL 2683201, at *5-6 (S.D.N.Y. May 17, 2011), *report & recommendation adopted*, 2011 WL 2693651 (S.D.N.Y. July 11, 2011)).  This inquiry "turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability."  *Colwell*, 158 F.3d at 646.  While the Plaintiff has alleged that he informed the Defendants of his disability, he has not alleged that his employer, BOCES, regarded him as disabled under the ADA.  In fact, even when BOCES agreed to temporarily accommodate his disability, Diamond specifically noted that "it is not clear we are obligated to provide you with an accommodation."  DE 10-7.

Therefore, the Court finds that the Plaintiff did not successfully contend that his employer regarded him as being disabled.

The Plaintiff fails to allege facts from which it is possible to infer that he possesses a physical or mental impairment that substantially limits him in one or more major life activity.  This failure precludes a failure to accommodate claim or a disability discrimination claim under his first cause of action.

Accordingly, the Plaintiff's cause of action is dismissed with prejudice.

**2.  The Age Discrimination in Employment Act**

In his fifth claim, the Plaintiff alleges that BOCES and the Board discriminated against Laface based on his age.

It is unlawful "for an employer to … discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]"  29 U.S.C. § 623(a)(1).  "To establish a prima facie case of age discrimination under the ADEA, [a plaintiff] must show that: (1) [he] was within the protected age group; (2) [he] was qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the action took

place under circumstances giving rise to an inference of discrimination." *Cordoba v. Beau Deitl & Assocs.*, No. 02 Civ. 4951, 2003 WL 22927874, at *8 (S.D.N.Y. Dec. 2, 2003) (citing *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000)).

In the context of a motion to dismiss, a plaintiff must plausibly allege that an adverse action was taken against him by his employer that was caused by his age. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). In other words, facts in the complaint must provide "plausible support to a minimal inference" of discriminatory causality. *Littlejohn v. City of New York*, 795 F.3d 297, 310-11 (2d Cir. 2015).

The Defendants challenge the Plaintiff's claim in two respects: (1) there was no adverse employment action; and (2) the facts in the complaint do not give rise to an inference of age discrimination. As discussed *infra* in Section II.D.1, Laface has plausibly alleged that his temporary transfer constituted an adverse employment action.

However, the complaint does not contain sufficient facts to plausibly support an inference of age discrimination. While Laface mentions that he is over the age of 40 and that he was transferred to a different location with a change in his work hours, there is nothing in the pleading that allows the Court to infer that one was plausibly the cause of the other. The Plaintiff does not allege that any other BOCES employees were ever treated differently than younger employees, that he was replaced by a younger employee, or that any of the Defendants ever mentioned the Plaintiff's age in any relevant conversation. Laface's conclusory pleading regarding his ADEA claim are no more than "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations omitted). There is nothing in this complaint that indicates discriminatory motivation by the Defendants. Without more, the Plaintiff does not allege any facts that would support an inference that BOCES transferred the Plaintiff because of his age.

Accordingly, the Plaintiff's discrimination cause of action based on the ADEA is dismissed without prejudice.

## D. RETALIATION CLAIMS

In his second and fourth claims, the Plaintiff asserts that BOCES and the Board retaliated against him, in violation of the ADA and Title VII.

### 1. The Americans with Disabilities Act

The Plaintiff argues that BOCES and the Board transferred him to HBW and JAC in retaliation for seeking an accommodation under the ADA. The Defendants counter that Laface has failed to allege a protected activity or an adverse employment action.

To succeed in an ADA retaliation claim, a plaintiff must prove that:

> (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.

*Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 148-49 (2d Cir. 2002). To survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) [his employer] discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (internal citations omitted).

### a. Protected Activity

The Plaintiff contends that his continued request for a reasonable accommodation from October 2016 to the present day constitutes a protected activity. "[I]t is well established that seeking a reasonable accommodation for a disability constitutes protected activity." *Rieger v. Orlor, Inc.*, 427 F. Supp. 2d 105, 120 (D. Conn. 2006) (internal citations omitted). Although Laface's purported disability is not one within the meaning of the ADA, this does not preclude his continued requests from being considered a protected activity. As "long as [he] belie[ved] that

[he] was disabled when [he] requested the accommodation and the request was made in good faith," the Plaintiff's application established a protected activity. *Id*. (citing *Munck v. New Haven Sav. Bank*, 251 F. Supp. 2d 1078, 1087 (D. Conn. 2003)). The parties do not dispute that Laface was sincere in his belief that he was disabled and that his request was in good faith. Rather, the Defendants have taken the position that the Union's CBA entitles them to transfer members without a reason, as they have done here. Accordingly, the Plaintiff's requests constitute a protected activity.

### b. Adverse Employment Action

The parties are at odds, however, on whether the Defendants' actions constitute an adverse employment action. The Plaintiff argues that his transfer from BTC, his temporary assignment at JAC, his time on temporary paid administrative leave, and an attempt to place him on FMLA leave are all adverse employment actions. An adverse employment action is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (internal citations omitted).

An internal transfer can be an adverse employment action if "accompanied by a negative change in the terms and conditions of employment." *Morris v. Lindau*, 196 F.3d 102, 113 (2d Cir. 1999) *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). The Plaintiff has alleged that both his transfer from BTC and his current temporary assignment contained significant changes to the terms of his employment. In support of this assertion, Laface contends that he was transferred in spite of his documented disability, which the Defendants were purportedly made aware of. His current temporary assignment requires a different shift and more manual labor than the previous position

at BTC. At the pleading stage, these changes are sufficient to allege "negative change[s] in the terms and conditions of employment." *Morris*, 196 F.3d at 113.

However, the Plaintiff's initial transfer, in October 2016, cannot form the basis for a retaliatory cause of action. Any and all requests for accommodations occurred after he was notified of his transfer to HBW in October 2016. In fact, it was this initial transfer that prompted him to seek accommodations in the first place. This transfer, which occurred prior to the purported protected activities cannot be an adverse employment action. *See, e.g.*, *Moy v. Perez*, 712 F. App'x 38, 40 (2d Cir. 2017) (finding that an adverse promotion decision was not an adverse employment action because "he does not allege prior participation in a protected activity"); *Fraiberg v. 4Kids Entm't, Inc.*, No. 07 CV 01411, 2008 WL 821820, at *2 (S.D.N.Y. Mar. 26, 2008) ("It is logically impossible that the imposition of the General Release requirement was motivated by retaliatory animus since the condition was announced prior to the alleged protected activity."); *Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) (Spatt, J.) ("There can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity.").

Further, placing Laface on temporary paid administrative leave is not an adverse employment action. In *Joseph v. Leavitt*, 465 F.3d 87, 92 (2d Cir. 2006), the Second Circuit found that placing the plaintiff on paid suspension for five months during an investigation did not constitute an adverse employment action. The Circuit stopped short of holding that paid suspensions would never be sufficient and noted that although "[a]n exceptionally dilatory investigation" might change the terms and conditions of employment in a sufficient manner, that was not the case before it. Laface was placed on paid administrative leave during his December 23, 2016 meeting with Diamond and assigned a temporary work assignment on January 19, 2017.

His leave lasted less than one month, and resulted in a work assignment that was within ten miles of his residence. As the Circuit noted in *Joseph*, "the terms and conditions of employment ordinarily include the possibility that an employee will be subject to an employer's [leave] policies in appropriate circumstances." *Id*. at 91. This short, paid administrative leave, without more, cannot constitute an adverse employment action.

The Court notes that the Plaintiff's allegation that the Defendants attempted to place him on FMLA leave has no basis in the facts alleged in the complaint. The fact that the Defendants sent Laface a Notice of Eligibility and Rights & Responsibilities under the FMLA does not indicate that BOCES was trying to place him on FMLA leave. Rather, BOCES was required to provide him with notice regarding his eligibility under the statute. This notice does not form a separate adverse employment action for the Plaintiff's ADA retaliation claim.

### c. Causation

Finally, the Defendants argue that the Plaintiff has not successfully established causation at the pleadings stage. "[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* "[A] plaintiff alleging retaliation … must show that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 2526, 186 L. Ed. 2d 503 (2013)). In other words, "that the adverse action would not have occurred in the absence of the retaliatory motive" even if it was not "the only cause of the employer's action." *Kwan*, 737 F.3d at 846.

21

At the prima facie stage, causation may be shown: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *LaSalle v. City of New York*, No. 13-cv-5109, 2015 WL 1442376, at *2 (S.D.N.Y. Mar. 30, 2015) (same).

Here, the Plaintiff's continued requests for reasonable accommodations following his notice of transfer are his only protected activities in the ADA context. The only adverse employment act at issue is his temporary transfer on January 19, 2017.

These activities do support an ADA retaliation claim. The circumstances alleged create a plausible inference of a causal nexus as a result of the temporal proximity between the Plaintiff's continued requests for accommodation and his temporary transfer. Although the Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010); *Gorman-Bakos v. Cornell Co-op. Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001) (same), district courts "have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation." *Beaumont v. Cablevision Sys. Corp.*, No 10-CV-3585, 2012 WL 1158802, at *6 (E.D.N.Y. Apr. 9, 2012) (internal citations omitted).

Since October 19, 2016, when he was informed of his original transfer, Laface had consistently requested that the Defendants grant him what he viewed as a reasonable accommodation for his purported disability. The Plaintiff reiterated his requests in multiple

forums: through his union, his attorney, and in various communications with the Defendants. This included in-person meetings with Diamond on November 28, 2016, and December 23, 2016, where the Plaintiff restated his request for an accommodation in person. Laface's temporary assignment on January 19, 2017 occurred within one and two months of these meetings. His continued engagement in his protected activity over the course of the fall and winter of 2016 and into 2017 create sufficient temporal proximity to establish causation. *See, e.g.*, *Vega*, 801 F.3d at 92 (two months); *Conforti v. Sunbelt Rentals, Inc.*, 201 F.Supp.3d 278, 303–04 (E.D.N.Y. 2016) (Spatt, J.) (two months); *Baron v. Advanced Asset & Prop. Mgmt. Sols., LLC*, 15 F. Supp. 3d 174, 283 (E.D.N.Y. 2014) (five to six weeks); *Kennebrew v. New York City Hous. Auth.*, No. 01-cv-1654, 2002 WL 265120 (S.D.N.Y. Feb. 26, 2002) (Report and Recommendation) (one month).

Accordingly, the Plaintiff's ADA retaliation claim alleging the Defendants retaliated against the Plaintiff by temporarily reassigning him survives. The remainder is dismissed with prejudice.

### 2. Title VII

The Plaintiff further pleads that the Defendants retaliated against him on the basis of his disability, in violation of Title VII. Title VII retaliation claims are analyzed under the same framework as ADA retaliation causes of action. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 222-23 (2d Cir. 2001). Title VII prohibits employers from retaliating against employees because they have "opposed any practice made an unlawful employment practice by this subchapter, or because [they] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Vega*, 801 F.3d at 89-90 (quoting 42 U.S.C. § 2000e-3(a)); *accord Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). Thus, an employer is barred "from taking 'materially adverse' action against an employee because the

23

employee opposed conduct that Title VII forbids or the employee otherwise engaged in protected activity." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 567-68 (2d Cir. 2011) (citing *White*, 548 U.S. at 56, 59).

As with Title VII discrimination claims and ADA retaliation claims, the *McDonnell Douglas Corp.* burden-shifting framework is used in adjudicating Title VII retaliation claims. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). "The allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn*, 795 F.3d at 316; *accord Jute*, 420 F.3d at 173 ("In determining whether this initial burden is satisfied in a Title VII retaliation claim, the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive."). A prima facie case of retaliation is established when "a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause." *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993).

Laface contends that the Defendants transferred him after he initiated numerous complaints to BOCES that complained of alleged discrimination on account of his disability. Beginning in 2015, he made a series of complaints to the Defendants regarding purported improper and wasteful expenditures of public funds, misuse of public funds, and contracting practices. He also filed an internal complaint with BOCES regarding his treatment in the workplace, was allegedly involved in a grievance filed by the Union regarding harassment and discrimination that occurred in 2014, and filed a grievance with PERB regarding the use of contractors without custodial employees present.

However, the Plaintiff's Title VII retaliation claim on the basis of a disability is precluded by the statute. Title VII does not prohibit discrimination or retaliation on the basis of a disability. *Julian v. New York City Transit Auth.*, 857 F. Supp. 242, 250 (E.D.N.Y. 1994) (noting that the ADA was enacted because "unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination"), *aff'd*, 52 F.3d 312 (2d Cir. 1995); *Chiesa v. New York State Dep't of Labor*, 638 F. Supp. 2d 316, 324 (N.D.N.Y. 2009) ("While … Title VII prohibits numerous forms of employment discrimination, the discrimination must be caused by one of the characteristics mentioned in [the statute].").  All of Laface's alleged protected activities pertain to his disability or general union grievances regarding workplace disputes.  He does not assert any discrimination by the Defendants that relates to any of the characteristics discussed in 42 U.S.C. § 2000e-2.  As a result, the Plaintiff fails to allege any facts that give rise to a Title VII retaliation claim.

Accordingly, the Plaintiff's Title VII retaliation claim is dismissed with prejudice.

## E. Section 1983 Claims

The Plaintiff asserts Section 1983 claims grounded in the First Amendment as well as the Fourteenth Amendment to the United States Constitution against all the Defendants.

Section 1983 provides, in relevant part,

> any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, is liable to the injured party for damages.

42 U.S.C. § 1983.  To state a § 1983 claim, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law"; and (2) that such conduct "deprived

[the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Section 1983 does not create any independent substantive right, but rather is a vehicle to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999); *see also Rosa R. v. Connelly*, 889 F.2d 435, 440 (2d Cir. 1989).

## 1. First Amendment

### a. Speech

The Plaintiff alleges that the Defendants transferred him from BTC for speaking out on purported improper and wasteful expenditures of public funds, misuse of public funds and illegal contracting practices.

The First Amendment states, in relevant part: "Congress shall make no law … abridging the freedom of speech." U.S. CONST. amend. I. To successfully plead a First Amendment retaliation claim based on speech, a plaintiff must allege that "(1) he engaged in constitutionally protected speech; (2) he suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." *Licopoli v. Mineola Union Free Sch. Dist.*, No. 09–3974, 2010 WL 4961667, at *5 (E.D.N.Y. Dec. 1, 2010) (internal quotations omitted). In general, the Second Circuit has established that "the government, acting as an employer, may regulate the speech of its employees far more extensively than that of the general public." *DelBene v. Alesio*, No. 00–cv–7441, 2001 WL 170801, at *6 (S.D.N.Y. Feb. 21, 2001) (citing *Waters v. Churchill*, 511 U.S. 661, 671–72, 114 S. Ct. 1878, 128 L. Ed. 2d 686 (1994) (plurality opinion)); *cf. Lewis v. Cowen*, 165 F.3d 154, 158 (2d Cir. 1999) ("It is by now well

established that public employees do not check all of their First Amendment rights at the door upon accepting public employment.").

To determine whether a public employee is engaged in constitutionally protected speech, the Court must decide "whether the employee spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). As Justice White opined:

> When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of only personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior....Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.

*Connick v. Myers*, 461 U.S. 138, 147-48, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983).

If he is not speaking as a matter of public concern, he cannot state a First Amendment claim for retaliation. However, if he is, the Court must then determine "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Garcetti*, 547 U.S. at 418. For speech to relate on a matter of public concern, it must touch on a matter of political, social or other concern pertinent to the community. *Connick*, 461 U.S. at 146; *see also Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (finding that in order for speech to be protected, it must "seek to advance a public purpose"). Further, Courts look to the speaker's motive to determine if it involves public concern. In other words, "speech on a purely private matter" or a personal grievance is unlikely to involve matters that impact the public. *See Sousa v. Roque*, 578 F.3d 164, 174 (2d Cir. 2009). In the alternative, the Second Circuit has held that if a plaintiff "wanted to debate issues of … discrimination, … sought relief against pervasive or systemic misconduct by a public agency or public officials, or

[filed an action that] was part of an overall effort to correct allegedly unlawful practices or bring them to public attention," it involves the public interest. *Huth v. Haslun*, 598 F.3d 70, 75 (2d Cir. 2010) (internal citations omitted).

Here, the Plaintiff argues that he made numerous complaints to BOCES and the Board regarding improper and wasteful expenditures of public funds, misuse of public funds and illegal contracting practices. The Defendants cite *Ruotolo* as support for their argument that the Plaintiff's speech is not a matter of public concern. In *Ruotolo*, a retired police sergeant alleged retaliation in violation of the First Amendment for preparing a report concerning health conditions at his former precinct and filing a lawsuit in the wake of this report. There, the Second Circuit held that "generalized public interest in the fair or proper treatment of public employees" is insufficient to implicate a matter of public concern if it merely involves a personal grievance related to that employee's employment conditions. *Ruotolo*, 514 F.3d at 190; *see also Singer v. Ferro*, 711 F.3d 334, 340 (2d Cir. 2013) ("First Amendment does not protect all private ventings of disgruntled public employees.").

Based on the Plaintiff's complaint, the speech at issue here seems fundamentally different than the type of workplace complaints present in *Ruotolo*. Laface's complaints to BOCES and the Board involved improper use of public funds as well as potentially illegal contracting practices. These issues implicate potential public corruption or misconduct on the part of the Board and BOCES. Such claims are almost always considered by the courts as a matter of public concern. *See, e.g.*, *Rookard v. Health & Hosps. Corp.*, 710 F.2d 41, 46 (2d Cir. 1983) (finding that an employees allegations of "corrupt and wasteful practices" implicated matters of public concern); *Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 264 (E.D.N.Y. 2012) (Spatt, J.) ("'[P]ublic corruption or wrongdoing' is almost always a matter of public concern (internal citations omitted));

28

*Israel v. Abate*, 949 F. Supp. 1035, 1041 (S.D.N.Y. 1996) ("Issues of public concern protected by the First Amendment include public institutional policies, the integrity of governmental entities, breaches of public trust or the expenditure of public funds.").

While the Defendants contend that Laface's speech related to his official duties, at this early stage of the case, the Court finds that the Plaintiff has pled sufficient facts to establish that his speech involved conduct outside the scope of his employment. While further factual development may shed additional light on the Defendants' contention, the parties must wait until the completion of discovery. Consequently, the Plaintiff has adequately alleged that the speech at issue here is on matters of public concern and therefore a protected activity.

The Defendants further contend that Laface was not subjected to any adverse employment actions. In the First Amendment context, an adverse action involves "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225 (2d Cir. 2006) (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004)). As discussed *supra* in Section II.D.1, Laface's temporary assignment does constitute an adverse employment action in the ADA context. Regarding the instant claim, the Second Circuit has found that "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process … insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to [a] classroom … which aggravated [the] teacher's physical disabilities" can qualify as adverse employment actions. *Id.* at 226. The changes in the terms and conditions of the Plaintiff's employment that resulted from his temporary transfer are sufficient to deter similar individuals from engaging in protected speech.

Finally, the Defendants contend that the Plaintiff failed to plead causality between the adverse employment action and protected speech. A plaintiff must allege that "there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)). "A plaintiff may establish causation either directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith v. Cty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (citing *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)); *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003) (same).

The Defendants argue that the lack of temporal proximity precludes the finding of a causal connection. In a motion to dismiss, "the plaintiff's pleading need not clearly establish that the defendant harbored retaliatory intent. It is sufficient to allege facts which could reasonably support an inference to that effect." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999). The complaint details a litany of activity that the Plaintiff participated in regarding his grievances with the Defendants that occurred over a period of years. He alleges that since 2015, he made numerous complaints regarding potential public corruption as well as improper contracting practices and discrimination based on his disability. However, while Laface has alleged facts involving his July 16, 2015 Union grievance, he has not provided any factual support of his public corruption complaints that allow the Court to infer intent either directly or through temporal proximity. Without additional support, Laface has failed to allege sufficient facts to determine whether a reasonable finding can be made regarding a causal connection.

Accordingly, the Plaintiff's claim of First Amendment retaliation as it pertains to speech is dismissed without prejudice.

### b. Redress of Grievances

The Plaintiff alleges that the Defendants transferred him from BTC for filing a grievance and agreeing to testify at the related hearing.

The First Amendment states, in relevant part, that "Congress shall make no law … abridging … the right of the people … to petition the Government for a redress of grievances." U.S. CONST. amend. I. "Indeed, the First Amendment protects not just the right of access to the courts but also '[t]he rights to complain to public officials and to seek administrative and judicial relief.'" *Hampton Bays Connections, Inc. v. Duffy*, 127 F. Supp. 2d 364, 372 (E.D.N.Y. 2001) (Spatt, J.) (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir.1994)). Courts review redress of grievances using the same constitutional analysis as the right to free speech. *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir. 1993).

The Plaintiff bases this cause of action on the July 2015 grievance with the PERB which involves an incident at BTC where contractors allegedly worked on the exterior of the building without custodians present. Laface reported this violation to the Union and was scheduled to testify on behalf of the Union at the arbitration hearing on November 2, 2016. The Defendants contend that Laface's role in this Union grievance is unprotected because it implicates a personal complaint rather than a matter traditionally held to be of public concern.

To determine whether a petition is a matter of public concern, "the Court must look at the substance of the complaints themselves to determine whether they address a matter of public concern." *Bates v. Bigger*, 192 F. Supp. 2d 160, 172 (S.D.N.Y. 2002), *aff'd*, 56 F. App'x 527 (2d Cir. 2002). The instant grievance involves an issue that intimately impacts the conditions of his employment at BTC. Laface's issue with the presence of custodians during exterior building work is a personal employment grievance, not a matter "of political, social, or other concern to the

community." *Hueston v. City of New York*, No. 00-cv-9512, 2005 WL 53256, at *6 (S.D.N.Y. Jan. 10, 2005) (quoting *Connick*, 461 U.S. at 146). The complaint involved only impacted the hours and wages of himself and his fellow Union members. Any issues raised by the grievance involves questions of employee distribution and resources, more akin to dissatisfaction with the status quo working environment than an attempt to reveal issues of wrongdoing. This is not an issue that impacts the public-at-large, safety or the administration of public resources and stands in stark contrast to grievances traditionally held by the Second Circuit to implicate public concern. *See, e.g.*, *Gorman-Bakos*, 252 F.3d at 553 n.4 ("speech focused on the safety of young children at horse shows" is a matter of public concern).

The Plaintiff cites *Sousa v. Rogue*, 578 F.3d 164 (2d Cir. 2009) and *Golodner v. Berliner*, 770 F.3d 196 (2d Cir. 2014) to support his contention that his grievance is protected by the First Amendment. In *Sousa*, the Second Circuit found that the district court had mistakenly concluded that the plaintiff's speech was not a matter of public concern because he was motivated by his employment gripes and emphasized that the speech at issue must be evaluated using "the content, form, and context of a given statement, as revealed by the whole record." *Sousa*, 578 F.3d at 175 (quoting *Connick*, 461 U.S. at 147-48). While motive may influence this determination, it is not dispositive. *Id.* As the Second Circuit instructed in *Sousa*, the Court has used motive as a factor in making its decision, but evaluated the grievance using the *Sousa* factors taking into account the entirety of the record at this early procedural stage. Laface's conduct was not only focused on his private motives, but on a topic that has no relation to public welfare, safety or health.

In *Golodner*, the plaintiff's speech related to potential policies of the New London Police Department that "raise[d] serious constitutional concerns." 770 F.3d at 205. The Second Circuit ruled that allegations of police department misconduct that implicated citizens' constitutional

rights undoubtedly raise issues that are the public's concern. *Id*. at 204. As the Union's grievance pertaining to the presence of custodial staff during renovations does not involve any "pervasive or systemic misconduct" by public officials nor an "effort to correct allegedly unlawful practices or bring them to public attention," *Golodner* is apposite. *Id*. at 203.

Reading the complaint in a light most favorable to the Plaintiff, the Court concludes that the Laface's grievances do not implicate maters of public concern. Accordingly, the Plaintiff's related Section 1983 First Amendment retaliation cause of action is dismissed with prejudice.

## 2. Procedural Due Process

The Plaintiff argues that the Defendants violated the Plaintiff's Fourteenth Amendment right to procedural due process by refusing to have "an interactive process" to discuss his request for accommodations and declining to investigate complaints of bullying and harassment.

The Fourteenth Amendment to the United States Constitution states in part that "[n]o State shall … deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. To allege a procedural due process claim under the Fourteenth Amendment, "[t]he two threshold questions … are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995); *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002) (same); *Mehta v. Surles*, 905 F.2d 595, 598 (2d Cir. 1990) (per curiam) (same); *Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d 332, 338 (E.D.N.Y. 2009) (Spatt, J.) (same). Initially, the Court must determine whether the Plaintiff's purported property interests are protected by the Constitution.

## a. Property Interests

Laface identifies two potential property interests: (1) an investigation of his complaints of bullying and harassment; and (2) engagement in an interactive process to address his request for reasonable accommodations. In general, not all contractual benefits are significant enough to be accorded constitutional protection. *Ezekwo v. New York City Health and Hosps. Corp.*, 940 F.2d 775, 782 (2d Cir. 1991). "Property interests are not created by the Constitution, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (internal quotation marks omitted); *Gen. Elec. Co. v. New York State Dep't of Labor*, 936 F.2d 1448, 1453 (2d Cir. 1991) ("The existence and dimensions of property interests are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (internal citations and question marks omitted)). Moreover, "[a] 'unilateral expectation' is not sufficient … [r]ather, a plaintiff must have 'a legitimate claim of entitlement to' the alleged property interest." *Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)).

The Fourteenth Amendment does provide public employees, such as Laface, with certain property interests that arise from their employment. *See Otero v. Bridgeport Hous. Auth.*, 297 F.3d 142, 151 (2d Cir. 2002). These property interests are typically "invoked to protect something more than an ordinary contractual right." *S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 966 (2d Cir. 1988). As Judge Newman warned in *S & D Maintenance Co.*:

> In one sense, of course, every enforceable contract right can be said to be an "entitlement." ... And whenever a person contracts with the state, breach by the state can be considered a denial of his entitlement to performance of the contract.

> If the concept of "entitlement" were this expansive, federal courts could be asked to examine the procedural fairness of every action by a state alleged to be in breach of its contracts.

*Id*. In *Otero*, the Second Circuit limited property rights in public contracts to circumstances where the right is characterized by "extreme dependence" or "permanence." *Id*. In other words, a plaintiff must "have a legitimate claim of entitlement to it." *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 29-30 (2d Cir. 1994) (internal citations omitted).

The Plaintiff's first purported property right, that he has a contractual right to an investigation of his complaints, is grounded in BOCES' anti-bullying and harassment policies. These are internal BOCES policies and are not alleged to be part of the CBA, an employment contract, or any other existing rules or state law. Even when the Union complained of this alleged behavior on behalf of Laface, it did not mention any specific policy that was purportedly violated by the Defendants. Without more, the Court is unable to determine whether Laface is entitled to any investigation as a matter of right. The Plaintiff's failure to identify any specific policy in his complaint is sufficient to preclude that he has a protectable interest.

However, even assuming that he does have a contractual interest, such an interest does not rise to the level of a constitutionally protected interest. In an analogous case, *Local 342, Long Island Pub. Serv. Emps. vs. Town Bd. of the Town of Huntington*, 31 F.3d 1191 (2d Cir. 1994), the Second Circuit found no property interest in a medical benefits provider pursuant to a collective bargaining agreement. *Id*. at 1192. Despite a clause in the collective bargaining agreement that provided for a union-sponsored trust to administer the plan, the town installed the state as the administrator. In concluding that there was no Fourteenth Amendment property interest, the Second Circuit applied *S & D Maintenance, Co.*, and held that "it is apparent that the Union and

the Trust possessed, at most, nothing more than a simple contractual right to receive the premium payments." *Id*. at 1195.

Here, the Plaintiff merely alleges a potential contractual right in BOCES policies to an investigation of his complaints. There is no contention that New York law entitles him to an investigation, or what any purported investigation would entail. Reviewing the Plaintiff's complaint, the Court is reminded of Judge Newman's warning of the consequences of such an expansive view of entitlement. *See S & D Maintenance Co.*, 844 F2d at 966. *See, e.g.*, *Martz*, 22 F.3d at 31 (where the plaintiff "alleg[ed] the breach of an ordinary contract … [t]he right to payment on such a contract d[id] not rise to the level of a constitutionally protected property interest"). Reading the complaint in a light most favorable to the Plaintiff, the failure to investigate violates nothing more than BOCES internal policies.

Moreover, there is no argument that there was either extreme dependence or permanence, as required by the Second Circuit. *See Rosenfeld v. Port Auth. of New York & New Jersey*, 108 F. Supp. 2d 156, 166 (E.D.N.Y. 2000) (holding that the alleged property interest was only a "voluntary contractual relationship" because it did not rise to the level of either extreme dependence or permanence"). In *S & D Maintenance Co.*, the Circuit gave the example of welfare benefits and tenure as examples of extreme dependence and permanence respectively. *See also DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 789 (2d Cir. 1999) (noting that a tenured public-school teacher has a cognizable property interest in pay and continued employment). This is in stark contrast to any purported investigation required by an internal policy. The instant interest is more reminiscent of the facts present in *Local 342* rather than those Second Circuit cases that recognized property interests protected by the Fourteenth Amendment.

Here, as in *Local 342*, the plaintiff merely alleges that an agreement or policy has been violated and that he is contractually entitled to the benefit. This stands in contrast to *Ezekwo*, where the Second Circuit found that a right to an appointment as chief medical resident was a recognized property interest. *Ezekwo*, 940 F.2d at 783. There, the Circuit found that this interest did not arise from a contractual provision. It held that the property interest was found in the plaintiff's right to the status that came with the title "Chief Resident." *Id*. Here, Laface's purported interest can only be found in a vague internal policy. In our Circuit. this is insufficient to establish a protected property interest.

The Plaintiff also fails to identify a legal foundation for any theoretical entitlement to his second purported property right, an interactive process regarding accommodations. "When determining whether a plaintiff has a claim of entitlement, [the courts] focus on the applicable statute, contract or regulation that purports to establish the benefit." *Brown v New York*, 975 F. Supp. 2d 209, 242 (N.D.N.Y. 2013) (quoting *Martz*, 22 F.3d at 30). While the complaint continuously references an "interactive process" with the Defendants, he fails to explain what this process entails or whether it has any basis in law, regulation or procedure.

Although the ADA "envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated," *Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000), the Plaintiff fails to explain why the Defendants' actions did not entail an "interactive process" as contemplated by the ADA. Rather, the complaint is full of instances of an "interactive process" between the parties. As one circuit noted, such a process can include:

> meet[ing] with the employee who requests an accommodation, request[ing] information about the condition and what limitations the employee has, ask[ing] the employee what he or she specifically wants, show[ing] some sign of having

considered [the] employee's request, and offer[ing] and discuss[ing] available alternatives when the request is too burdensome.

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999); *see also Jacques v. DiMarzio, Inc.*, 200 F. Supp. 2d 151, 170 (E.D.N.Y. 2002) (explaining that the employer should "explore 'what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered [the] employee's request, and offer and discuss available alternatives when the request is too burdensome.'" (quoting *Taylor*, 184 F.3d at 317)).

There was considerable back and forth between the parties, two in-person meetings, requests of additional information about the Plaintiff's limitations and condition, and numerous attempts at accommodating the Plaintiff's disability with available alternatives. The Defendants even revised their original assignment, albeit purportedly only temporarily, to prevent the Plaintiff from having to drive more than ten miles from his residence.

While the Plaintiff's request to return to his old shift at his old work assignment has not been granted, due process does not necessarily guarantee a desired result. *See, e.g.*, *Ostrowsky v. Dept. of Educ. of New York City*, No. 12-CV-2439, 2013 WL 5963137, at *6 (E.D.N.Y. Nov. 7, 2013) (holding that a tenured school teacher's involuntary transfer without loss of pay or employment, additional commuting resulting from a transfer and loss of seniority-based benefits did not implicate constitutionally protected property interests). While Laface has raised legitimate concerns regarding the nature of his new assignment and potential motivations, it can hardly be said that *no* interactive process was followed. Therefore, even if the Plaintiff had properly pled that there was a failure of an "interactive process" as contemplated in the ADA, it would not implicate a constitutionally protected property interest. However, without any reference to a basis for this entitlement, the Court is unable to determine if "[the interest is] created and [its]

dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]" *Loudermill*, 470 U.S. at 538 (quoting *Roth*, 408 U.S. at 577).

### b. Deprivation & Article 78 Proceeding Requirement

Even if the Plaintiff properly alleged constitutionally protected property interests, he is unable to demonstrate deprivation of any procedural protections. The Plaintiff is entitled to an Article 78 proceeding in New York State court, an adequate post-deprivation remedy for procedural due process. *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996).

Further, he was required to bring an Article 78 proceeding prior to bringing this claim to federal court. "When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Id.* at 880 (citing *Hudson v. Palmer*, 468 U.S. 517, 532, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)). In the later case, "the 'due process' required by the fourteenth amendment is satisfied by the availability at the state level of an adequate post-deprivation hearing." *Kraebel v. New York City Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 404 (2d Cir. 1992).

Here, both the apparent lack of an investigation of complaints of bullying and a refusal to engage in an "interactive process" to address the Plaintiff's condition are both properly categorized as random, unauthorized acts by the Defendants. The complaint does not allege that in committing these acts, the Defendants are utilizing or violating any sort of state procedure. Rather, Laface argues that the Defendants summarily refused to conduct either a process or investigation. In New

York State, "an Article 78 proceeding is a perfectly adequate postdeprivation remedy," where "constitutional issues can be decided." *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881; *see also Nenninger v. Vill. of Port Jefferson*, 509 F. App'x 36, 39 n.2 (2d Cir. 2013) ("[T]he claim fails in any event because [the plaintiff] was free to bring an Article 78 mandamus proceeding in New York State Court."). The Plaintiff's failure to plead that he utilized an Article 78 proceeding, or any other post-deprivation hearing precludes him from now seeking such relief in federal court.

Accordingly, the Plaintiff's Section 1983 procedural due process cause of action is dismissed with prejudice.

### F. ABANDONMENT

The Defendants argue that the Plaintiff's claims for disability discrimination and hostile work environment must be dismissed because Laface's failure to oppose their arguments regarding these claims constitutes abandonment. The Court does not find that the Plaintiff failed to respond to the Defendants' arguments relating to disability discrimination. Laface's arguments regarding his failure to accommodate claim also apply to the disability discrimination claim. However, the Plaintiff did not respond, in any way, to the Defendants' arguments concerning the hostile work environment claim under the ADA.

District courts in this circuit have found that "[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims." *Youmans v. Schiro*, No. 12 Civ. 3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013). *See, e.g.*, *Lomonoco v. Saint Anne Inst.*, No. 1:15-CV-1163, 2018 WL 2324051, at *12 (N.D.N.Y. May 22, 2018) ("[T]he Court may, and does, construe the failure to respond to an opposing party's arguments as an effective abandonment of the claim."); *Javed v. Medgar Evers Coll. of the City*

*Univ. of New York*, No. 15-CV-7424, 2017 WL 4357138, at *4–5 (E.D.N.Y. Sept. 29, 2017) (dismissing a series of claims for failure to respond to defendants' arguments), *aff'd sub nom. Javed v. Medgar Evers Coll. of City Univ. of New York*, 724 F. App'x 73 (2d Cir. 2018), *as amended* (June 12, 2018); *Hou v. Lam*, No. 3:16-CV-01592 (VAB), 2017 WL 4316394, at *3 (D. Conn. Sept. 27, 2017) (dismissing Connecticut state law claim due to the plaintiff's failure to respond to the defendants' arguments); *Robinson v. Fischer*, No. 09 CIV. 8882 (LAK)(AJP), 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim." (citing *Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."))); *Bonilla v. Smithfield Assocs. LLC*, No. 09 Civ. 1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (dismissing certain claims where the plaintiff failed to respond to the defendant's arguments); *Thomas v. Atl. Express Corp.*, No. 07 Civ.1978, 2009 WL 856993, at *2 (S.D.N.Y. Mar. 31, 2009) (same) (citing *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 722–23 (S.D.N.Y. 2005)); *Burchette v. Abercrombie & Fitch Stores, Inc.*, No. 08 Civ. 8786, 2009 WL 856682, at *9 (S.D.N.Y. Mar. 30, 2009) (dismissing plaintiff's constructive discharge claim because plaintiff abandoned it by failing to address it in her opposition motion to defendant's motion to dismiss all claims); *Hanig*, 384 F. Supp. 2d at 723 ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed."); *Martinez v. Sanders*, No. 02 Civ. 5624, 2004 WL 1234041, at *3 (S.D.N.Y. June 3, 2004) ("Because Plaintiff did not address Defendant's motion to dismiss with regard to these claims, they are deemed abandoned."); *Anti–Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895,

907 n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue ... which provides an independent basis for dismissal."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997). Therefore, that claim is deemed abandoned.

Accordingly, the Plaintiff's hostile work environment claim is dismissed with prejudice.

## G. STATE LAW CLAIMS

The Defendants argue that the Plaintiff's failure to plead compliance with Education Law § 3813 precludes Laface from now bringing his state law claims.

Section 3813 provides in relevant part:

> No action or special proceeding, for any cause whatever, ... shall be prosecuted or maintained against any school district ... unless it shall appear by and as an allegation in the complaint ... a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim.

N.Y. Educ. Law § 3813(1). Compliance with this obligation is a prerequisite to filing suit. *See Putkowski v. Warwick Valley Cent. Sch. Dist.*, 363 F. Supp. 2d 649, 653-54 (S.D.N.Y. 2005); *Angarano v. Harrison Cent. Sch. Dist.*, 14 Misc. 3d 1217(A) (N.Y. Sup. Ct. Jan. 16, 2007) ("It is well settled that Education Law § 3813(1) is a statutory condition precedent to a petitioner's bringing of a proceeding against a school district or board of education, and a petitioner's failure to comply is a fatal defect mandating dismissal of the action." (internal citations omitted)).

The Plaintiff admits that he has not filed notices of claim regarding these claims on any of the Defendants. Undoubtedly, BOCES and the Board fit within the statute's scope and the Plaintiff's failure to serve a timely notice of claim mandates dismissal of his state law claims against them.

However, the parties dispute as to whether the rest of the Defendants are subject to the statute's notice requirement. Laface contends that Lutz, McSweeney, Diamond, Anderson and Bilka are not "school officers" within the meaning of the statute. A "school officer" is defined as:

> a clerk, collector, or treasurer of any school district; a trustee; a member of a board of education or other body in control of the schools by whatever name known in a union free school district, central school district, central high school district, or in a city school district; a superintendent of schools; a district superintendent; a supervisor of attendance or attendance officer; or other elective or appointive officer in a school district whose duties generally relate to the administration of affairs connected with the public school system.

N.Y. Educ. Law § 2(13). Based upon this definition, Lutz, McSweeney, Diamond, Anderson and Bilka all qualify as "school officers." While none of these Defendants are trustees, treasurers, collectors, clerks, or district superintendents, they are all "elective or appointive officer[s]" who are responsible for the "administration of affairs" at BOCES. All of these district-wide positions "relate to the administration of affairs" within BOCES. There is no contention in the complaint or any other part of the record that any of these roles are school-specific, such as a principal or teacher, and therefore not an "officer" as defined by the Education Law. Rather, the complaint contains factual allegations that indicate these were all district-wide roles. Accordingly, the Plaintiff was required to comply with the notice requirements of § 3813(1) with regard to his state-law claims against the Defendants.

Moreover, the Court is unable to grant leave to allow the Plaintiff to file a late notice since the one-year statute of limitations period for his state-law claims has now expired. Discrimination claims against a school district or officer of a school district, pursuant to the NYSHRL are subject to a one-year statute of limitations. N.Y. Educ. Law § 3813(2-b). Consequently, the Plaintiff's state law claims against the Defendants are dismissed with prejudice.

## H. LEAVE TO AMEND

The Plaintiff has argued that rather than dismissing his claims, the Court should allow him to amend his pleading.

FED. R. CIV. P. 15(a)(2) applies to amending pleadings once the time to do so as a matter of right has expired. It states, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Courts have construed this rule liberally and have said that "the … purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim." *Safety–Kleen Sys., Inc. v. Silogram Lubricants Corp.*, No. 12-CV-4849, 2013 WL 6795963, at *2 (E.D.N.Y. Dec. 23, 2013) (quoting *Chapman v. YMCA of Greater Buffalo*, 161 F.R.D. 21, 24 (W.D.N.Y. 1995)); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (finding a "strong preference for resolving disputes on the merits" (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005))).

"The Rule reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated ... and 'mere technicalities' should not prevent cases from being decided on the merits." *D.C.R. Trucking & Excavation, Inc. v. Aetna Cas. and Sur. Co.*, No. 96-cv-3995, 2002 WL 32096594, at *8 (E.D.N.Y. Oct. 31, 2002) (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000)).

In the Second Circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). A court should deny leave to amend only "in instances of futility, undue delay, bad

faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

In the instant matter, the Court only finds good cause to allow the Plaintiff to replead his discrimination claim based on the ADEA and his First Amendment retaliation claim grounded in speech. While this Court and the Second Circuit generally indulges a plaintiff's request to replead following a motion to dismiss, for the remainder of the Plaintiff's claims that have been dismissed, it would be a futile endeavor. *See Foman*, 371 U.S. at 182; *Oneida Indian Nation of New York v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003) (internal citations omitted), *reversed on other grounds by City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197, 125 S. Ct. 1478, 161 L. Ed. 2d 386 (2005); *In Re American Express Co.*, 39 F.3d 395, 402 (2d Cir. 1994); *John Hancock Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994); *Ruffolo v. Oppenheimer & Co., Inc.*, 987 F.2d 129, 131 (2d Cir. 1993). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Oneida Indian Nation of New York*, 337 F.3d at 126 (citing *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

For reasons addressed in the instant Order, amending the Plaintiff's discrimination claims under the ADA and Rehabilitation Act; retaliation claims under Title VII and the First Amendment's right to petition clause; procedural due process claim under the Fourteenth Amendment; and state-law claims would be futile. It is manifestly clear that the Plaintiff is unable to sufficiently allege these claims regardless of any potential amendments. The facts pled in the complaint do not support them under any circumstances.

Allowing Laface to revise his hostile work environment claim under the ADA would also be inappropriate. The Plaintiff's abandonment of this cause of action forecloses his ability to revise it. *See, e.g.*, *Rothberg v. Phil's Main Roofing, LLC*, No. 14-CV-10195 (NSR), 2017 WL 1162904, at *9 (S.D.N.Y. Mar. 24, 2017), *reconsideration denied*, 2017 WL 1857257 (S.D.N.Y. May 5, 2017).

## III. CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss the Plaintiff's complaint pursuant to Rule 12(b)(6), is granted in part. The Plaintiff's disability discrimination claims under the ADA & Rehabilitation Act; hostile environment claim under the ADA; retaliation claim under Title VII; Section 1983 First Amendment redress of grievances claim; Section 1983 procedural due process claim; and state law claims are dismissed with prejudice. Laface's ADEA discrimination claim and Section 1983 First Amendment free speech claim are dismissed without prejudice. A portion of his retaliation claim under the ADA survives.

For those claims that are dismissed without prejudice, the Plaintiff is granted leave to replead them within thirty (30) days of entry of this Order. Failure to do so will result in their dismissal with prejudice.

It is **SO ORDERED**:

Dated: Central Islip, New York

November 15, 2018

_____*/s/ Arthur D. Spatt*_____

ARTHUR D. SPATT

United States District Judge