**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
JOHN LAFACE,

                          Plaintiff,                          **MEMORANDUM OF**
                                                              **DECISION & ORDER**
            -against-                                         2:18-cv-1314 (ADS) (AKT)

EASTERN SUFFOLK BOCES; BOARD OF
TRUSTEES, EASTERN SUFFOLK BOCES,                    F I L E D
                                                    IN CLERK'S OFFICE
                                              U.S. DISTRICT COURT E.D.N.Y.
                          Defendants.
---------------------------------------------------------X     ★   MAY 14 2020   ★
**APPEARANCES:**
                                                        LONG ISLAND OFFICE
**Harriet A. Gilliam, Esq.**
*Attorney for the Plaintiff*
21 W. Second Street
Riverhead, NY 11901

**Sokoloff Stern LLP**
*Attorneys for the Defendants*
179 Westbury Avenue
Carle Place, NY 11514
            By:     Adam I. Kleinberg, Esq.
                    Chelsea Ella Weisbord, Esq., Of Counsel.

**SPATT, District Judge:**

## I.    BACKGROUND

        This opinion rules on two motions concerning the amendment of the complaint in an

employment action.  In March 2018, plaintiff John Laface (the "Plaintiff") sued his employer,

Eastern Suffolk BOCES ("BOCES"), its Board of Trustees (the "Board"), and several individual

BOCES employees (collectively, the "Defendants"), in response to his involuntary transfer in

October 2016.  He raised causes of action for discrimination and retaliation, as well as due

process and free speech claims under the Constitution, federal law, and state law.  After multiple

motions to dismiss the action, only BOCES and the Board remain as Defendants in this case.

1

In June 2019, the Plaintiff moved to file an amended complaint, his second amended complaint in the action. The Defendants move to strike portions of this second amended complaint, contending that the Plaintiff raises allegations that the Court had previously dismissed with prejudice. The Plaintiff claims that he inadvertently failed to remove those allegations, and, that in any event, he had corrected this error by moving to file a third amended complaint. He has filed a proposed version of that complaint with the Court.

In the proposed third amended complaint, the Plaintiff seeks to raise new claims. He also seeks to add as a Defendant one of the BOCES employees that the Court had previously dismissed from the action. The Defendants oppose this motion, arguing that the proposed amendments, as well as the adding of the employee as a party, are futile.

The background of this opinion briefly describes the underlying action, as well as the action's now voluminous procedural history. The discussion section rules on the two pending motions. For the following reasons, the Court grants in part the motion to amend and denies it in part. The Court also denies as moot the motion to strike.

**A. Background and the Original Complaint**

The facts of this case were previously set forth by this Court and need not be repeated in their entirety. For the purposes of the instant motions, it is sufficient to note the following facts.

The Plaintiff worked as a custodial worker for BOCES at the Gary D. Bixhorn Technical Center in Bellport, New York (the "Bixhorn Center"). ECF 1 at 1. During his 30-year tenure at BOCES, the Plaintiff developed a condition that caused him stress and anxiety, and kept him from driving more than ten miles from his home. *Id.* at 2. He also had a history of filing grievances with BOCES concerning work conditions. *Id.* at 15. In October 2016, the Plaintiff's supervisors informed him by letter that he had been reassigned to the H.B. Ward Camps

2

("HBW") in Riverhead, New York, which, unlike the Bixhorn Center, was located more than ten miles from the Plaintiff's home. *Id.* The administration at BOCES knew of the Plaintiff's disability at the time they reassigned him. *Id.* at 8.

The Plaintiff began a period of sick leave upon the date of his transfer to HBW, from October 28, 2016, to November 27, 2016. *Id.* at 8. At a meeting with a BOCES administrator on November 28, 2016, the Plaintiff asked that BOCES make a reasonable accommodation for his documented disability. *Id.* at 8–9. The Plaintiff alleged that BOCES made no such accommodation, and that it placed him on administrative leave in December 2016. *Id.* at 9–11. In January 2017, the Plaintiff received a temporary reassignment to the Jefferson Academic Center ("JAC") in Port Jefferson, New York, a location that was fewer than ten miles from the Plaintiff's home. *Id.* at 11; ECF 10-7 at 2.

The Plaintiff brought **this** action against BOCES, the Board, and several BOCES employees, including Jill Diamond ("Diamond"), the BOCES Personnel Officer. He raised several causes of action: disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*; retaliation under the ADA and Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.*; age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; a hostile work environment claim under the ADA; protected speech, redress of grievances, and due process claims under 42 U.S.C. § 1983, grounded in the First and Fourteenth Amendments; and violations of the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. LAW § 296 *et seq.*. *Id.* at 12–25.

3

**B. Motions to Dismiss**

The Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure ("FED. R. CIV. P.") 12(b)(6).  ECF 9.  In November 2018, the Court granted the motion in part (the "November 2018 Order").  ECF 25.  As an initial matter, the Court ruled that defendant Diamond, the BOCES Personnel Officer, was a school "officer" within the meaning of state education law.  *Id.* at 43.  The Court dismissed with prejudice the Plaintiff's ADA and Rehabilitation Act discrimination claims; the ADA hostile work environment claim; the Title VII retaliation claim; the § 1983 First Amendment redress of grievances claim; the § 1983 due process claim; and the NYSHRL claims.  *Id.* at 10–16, 23–25, 31–43.  The Court dismissed without prejudice the ADEA discrimination claim and the § 1983 First Amendment free speech claim, and allowed a portion of the ADA retaliation claim to proceed.  *Id.* at 16–23, 26–30.  As to the ADA retaliation claim, the Court ruled that "the only adverse employment act at issue" was the January 2017 temporary transfer to JAC.  *Id.* at 22.  The Court dismissed the remainder of the retaliation claim with prejudice.  *Id.* at 23.  The Court later denied the Plaintiff's motion for reconsideration.  ECF 41.

In December 2018, the Plaintiff filed an amended complaint.  ECF 29.  The amended complaint asserted five causes of action, some of which contained multiple claims: (1) ADA retaliation; (2) ADEA discrimination and hostile work environment; (3) a § 1983 claim under the ADA, the Rehabilitation Act, and the Fourteenth Amendment; (4) a § 1983 First Amendment speech claim; and (5) NYSHRL claims.  *Id.* at 12–20.

The Defendants moved under Rule 12(b)(6) to partially dismiss the amended complaint, seeking dismissal with prejudice of all causes of action **other than** the ADA retaliation claim.  ECF 31.  In May 2019, the Court granted the motion in part (the "May 2019 Order").  ECF 43.

4

The Court dismissed with prejudice the Plaintiff's third and fifth causes of action in their entirety, and the ADEA hostile work environment claim. *Id.* at 5–12, 18. It also dismissed all individual Defendants from the action. *Id.* at 16–18. The Court also held that the Plaintiff could proceed with the ADA retaliation claim, the ADEA discrimination claim, and the § 1983 free speech claim. *Id.* at 19.

The Plaintiff made multiple attempts to file an amended complaint by way of other motions. ECF 42 (preliminary injunction), 46 (Order to Show Cause), 51 (seeking permission to file second amended complaint *nunc pro tunc*). The Court denied two of the motions, and granted the Plaintiff's motion to withdraw the other. ECF 44, 56, 9/27/19 entry.

### C. The Pending Motions

On June 14, 2019, the Plaintiff filed the second amended complaint. ECF 57. The Defendants moved to strike the second amended complaint. ECF 59.

Two days later, the Plaintiff moved to amend the second amended complaint, attaching a proposed third amended complaint, as well as an affidavit from the Plaintiff. ECF 60. Both motions are presently before the Court.

## II.   DISCUSSION

The Court now rules on the two pending motions. The Court first rules on the motion to amend, because granting that motion would render moot the motion to strike. *See Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 23 (2d Cir. 2012) (summary order) (noting that an amended complaint "'ordinarily supersedes the original, and renders it of no legal effect'") (quoting *Dluhos v. Floating & Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 68 (2d Cir. 1998)). For the reasons that follow, the Court grants in part the motion to amend, denies the motion in part, and denies as moot the motion to strike.

5

## A. Legal Standard

FED. R. CIV. P. 15(a), which typically governs a motion to amend a complaint, states, in relevant part, "[a] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Unless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend. *See Milanese v. Rust-Oleum Corp*, 244 F.3d 104, 110 (2d Cir. 2011); *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam); *Hemphill v. Schott*, 141 F.3d 412, 420 (2d Cir. 1998).

The decision on whether to grant a motion to amend rests within the sound discretion of the district court. *Aetna Cas. & Sr. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603–04 (2d Cir. 2005); *Hemphill*, 141 F.3d at 420. In choosing whether to grant leave to amend, prejudice to the opposing party is one of the "most important" issues to consider. *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (internal quotations omitted).

Furthermore, where, as here, the proposed amended complaint adds new parties, FED. R. CIV. P. 21 also governs. Rule 21 explains that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21; *see also City of Syracuse v. Onondaga Cty.*, 464 F.3d 297, 308 (2d Cir. 2006) ("Although Rule 21 contains no restrictions on when motions to add or drop parties must be made, the timing of the motion may influence the court's discretion in determining to grant it." (internal citations and quotation marks omitted)).

As to whether a proposed amendment is futile, a Court must determine whether it could withstand a Rule 12(b)(6) motion to dismiss. *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the

6

factual allegations set forth in the complaint as true and draw all reasonable inference in favor of the Plaintiff. *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *E. Materials Corp v. Mitsubishi Plastics Composites Am., Inc.*, 307 F. Supp. 3d 52, 57 (E.D.N.Y. 2008) (Spatt, *J.*); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp.2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Excevarria v. Dr Pepper Snapple Grp., Inc.*, 764 F. App'x 108, 109 (2d Cir. 2019) (summary order). The Second Circuit has expounded that after *Twombly* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible clam for relief survives a motion to dismiss and [d]etermining whether a complaint state a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

**B. As to the Motion to Amend**

The Plaintiff relies on materials outside the pleadings in support of his motion to amend. The Defendants also cite numerous documents that they claim are incorporated by reference in the Plaintiff's proposed third amended complaint (hereinafter "TAC"). Accordingly, the Court

first rules on whether it may consider those materials before addressing the merits of the motion to amend itself.

### 1.   The Substance of the TAC

In the TAC, the Plaintiff raises new factual allegations about events occurring after his transfer to JAC.  ECF 60-2 at 11.  They amount to ten new pages, which the court now briefly summarizes.  In June 2018, the Plaintiff identified at JAC the presence of mold throughout the building, which caused him to develop a severe allergy to the mold that affected his respiratory system and substantially limited his ability to work.  *Id.*  This condition rendered him unable to perform the essential functions of his custodial position without a reasonable accommodation of being reassigned to a mold-free work environment.  *Id.*  The Plaintiff notified the Defendants of his condition in June 2018 by way of a doctor's certification.  *Id.*

BOCES, through personnel officer Diamond, corresponded with the Plaintiff's doctor and claimed that it had removed the mold from JAC, but it later informed the Plaintiff's union that it needed to perform more tests.  *Id.* at 13–15.  Although the Plaintiff's doctor cleared him to return to work, upon returning, he once again found mold throughout the building.  *Id.* at 15–16.  He wrote several letters to BOCES over the second half of 2018 regarding the mold issue.  *Id.* at 14– 17.  BOCES, again through Diamond, refused to transfer him to a mold-free environment; forced him to go on ADA leave; and caused him to exhaust all of his accrued sick time and much of his vacation time.  *Id.* at 11–20.  The also Defendants refused to process a 2019 application for the Plaintiff's transfer back to the Bixhorn center.  *Id.* at 3, 19, 32.

As to causes of action, the TAC once again asserts claims for ADA retaliation; ADEA discrimination; and a § 1983 free speech claim, although the retaliation claim now includes the allegation that BOCES failed to accommodate the Plaintiff by transferring him to a mold-free

8

environment. *Id.* at 21–26. The TAC also raises five new claims, all of them based on the mold condition: discrimination and failure to accommodate under the NYSHRL, the Rehabilitation Act, and the ADA;; an unspecified § 1983 claim; and common law fraud. *Id.* at 27–35. He also seeks to add Diamond as a defendant. *Id.* at 1.

### 2. Materials Outside the Pleadings

The Plaintiff attaches an affidavit to his motion to amend. ECF 60-3. It is the same affidavit that he submitted as part of his May 2019 application for an order to show cause. ECF 46-3. The affidavit references multiple prior efforts by the Plaintiff to amend his complaint:

> I submit this Affidavit in support of my claims under Section 504 of the Rehabilitation Act, the Americans with Disabilities Act [], the New York State Human Rights Law and New York Common Law.

> I further submit this Affidavit in support of the Order to Show Cause for Preliminary Injunction Relief and temporary restraining order, seeking interim relief, because there are emergency situations causing me to suffer []irreparable harm in the absence of the Court's intervention, concerning which I have the likelihood of success upon the merits. Furthermore, in the balance of justice, this relief is warranted. I also submit this Affidavit in support of my motion to file a Second Amended Complaint pursuant to Fed. R. Civ. P. 15, by Order to Show Cause.

ECF 60-3 at 1–2 (paragraph numbers omitted). The affidavit makes no reference to the present motion to file a third amended complaint.

In opposition to the motion to amend, the Defendants contend that the Court should not consider the affidavit because it was neither included nor incorporated by reference in any prior pleading. ECF 64 at 14–15. The Plaintiff did not file a reply.

The Court declines to consider the affidavit when ruling on the motion to amend. In deciding a motion to amend, the Court accepts the factual allegations in the proposed amended complaint as true, and does not consider any exhibits outside of those included or incorporated

by reference in the complaint or the proposed amended complaint. *See Arnold v. Research Found. for State Univ. of N.Y.*, 216 F. Supp. 3d 275, 284 (E.D.N.Y. 2016) (Spatt, *J.*); *see Prompt Nursing Emp't Agency LLC v. Valdez*, 222 F. Supp. 3d 194, 202–03 (E.D.N.Y. 2016) (Spatt, *J.*); *Cano v. DPNY, Inc.*, 287 F.R.D. 251, 257 (S.D.N.Y. 2012) (declining to consider affidavits and other outside evidence submitted by proposed defendants in opposition to the plaintiff's motion to amend); *DiPace v. Goord*, 308 F. Supp. 2d 274, 278 (S.D.N.Y. 2004) ("Normally, a motion for leave to amend is adjudicated without resort to outside evidence.").

In any event, the Plaintiff provides no basis for the Court to consider the affidavit. The Plaintiff already submitted the affidavit in May 2019 as part of an application for an order to show cause. It naturally **made** no mention of the proposed third amended complaint, which would not be filed until afterwards. Moreover, the proposed third amended complaint does not refer to the affidavit or the application for an order to show cause. *See, e.g.*, *Prompt Nursing Emp't Agency LLC*, 222 F. Supp. 3d at 202 ("The Plaintiff's complaint did not contain the purported contract. The Defendant's initial answer did not incorporate the contract, nor did her amended answer.").

The Defendants rely on several documents that they claim are incorporated by reference into the TAC: (1) a July 2, 2018 letter from Diamond, written in reply to a letter from the Plaintiff's doctor informing BOCES of the Plaintiff's dust allergy, in which Diamond requested additional information about the nature of the Plaintiff's allergy; (2) the August 1, 2018 letter in which Diamond advised the Plaintiff that he was being placed on medical leave; (3) records of BOCES's mold testing at JAC; (4) Diamond's August 24, 2018 response to Laface's letter opposing being placed on medical leave; (5) the September 7, 2018 letter from Diamond stating that BOCES had removed the mold from JAC, and the September 11 2018 letter from the

10

Plaintiff's doctor clearing him to return to work, along with later correspondence in which the Plaintiff claimed he was leaving again because of newly discovered mold; (6) letters from Diamond asking the Plaintiff to provide a doctor's note indicating that he was not have a significant impairment posing a significant risk of substantial harm if exposed to dust, he does need to work in a dry workplace, and an explanation of how his doctor's prior notes were incorrect; and (7) the Plaintiff's April 2019 application to work at the Bixhorn Center (the position he held before his October 2016 transfer), that was denied because he had failed to provide the information that Diamond had requested.  ECF 60 at 6–13.

As to (1), the Court rules that the July 2 letter from Diamond was incorporated by reference in the TAC.  *See* ECF 60-2 at 13 ("In a July 2, 2018 letter to the Plaintiff's doctor . . . Jill Diamond wrote . . . .").  The same applies for (2), the August 1, 2018 letter.  *See id.* ("In an August 1, 2018 letter to Plaintiff, Diamond stated . . . .").  On the same page of the TAC, the Plaintiff also references (3), the August 7, 2018 letter.  *See id.* ("However, in an August 7, 2018 e-mail to Plaintiff's union, Diamond stated that ESBOCES 'would like the opportunity to perform its own testing.'").  The TAC also references (4), Diamond's August 24, 2018 letter. *See id.* at 14–15 ("Diamond responded to Plaintiff's August 10, 2018 letter, by letter dated August 24, 2018.").  The Plaintiff also referenced the (5) letters in the TAC.  *See id.* at 15 ("Diamond, misrepresented in a September 7, 2018 e-mail that the mold source has been successfully abated . . . .  Plaintiff's doctor cleared him to return to work . . . by written medical clearance dated September 11, 2018.").

As to (6), the Plaintiff references only the first of Diamond's letters regarding the Plaintiff's returning to work.  *See id.* at 17. ("In a September 28, 2018 letter to Plaintiff,

Diamond challenged his return to work."). Finally, the Plaintiff mentioned Diamond's 2019 letter rejecting his application to transfer to the Bixhorn Center. *Id.* at 32.

Accordingly, the Court will not consider the Plaintiff's affidavit, and the last two letters from Diamond asking the Plaintiff to provide a doctor's note concerning his allergy. The Court will however, consider the remaining documents listed by the Defendants. *See Seemann v. Coastal Envt'l. Grp., Inc.*, 219 F. Supp. 3d 362, 367 (E.D.N.Y. 2016) (Spatt, *J.*); *see also Arnold*, 216 F. Supp. 3d at 284.

### 3. As to the Third Amended Complaint

In support of the TAC, the Plaintiff argues that it would be a manifest injustice if he were denied his rights under the ADA, the NYSHRL, and the Rehabilitation act to be allowed to perform the essential functions of his job with a reasonable accommodation. ECF 60-4 at 5–6. He contends that his claims are cognizable because he had demonstrated that his employer acknowledged his disability of an allergy to mold; that he had requested a reasonable accommodation; and that he was retaliated against for making that request. *Id.* at 6–8. He further claims, without **substantiation**, that he meets the standard under FED. R. CIV. P. 21 for adding Diamond as a Defendant. *Id.* at 5.

In opposition, the Defendants raise five arguments **to** show that the TAC is futile, and one argument with regard to adding Diamond. ECF 64. First, they argue that the Plaintiff's NYSHRL and fraud claims are futile because the Plaintiff never served a notice of claim. *Id.* at 15–16. Second, they assert that the Plaintiff's unspecified new § 1983 claim is futile because it is facially insufficient, as § 1983 does not by itself create any substantive rights, and it also appears to be duplicative of his proposed ADA discrimination claim. *Id.* at 16–17. Third, they contend that the proposed disability discrimination and failure to accommodate claims under the

12

ADA, Rehabilitation Act, and NYSHRL are futile because the Plaintiff has not pleaded, and cannot plead, that his mold allergy constitutes a disability within the meaning of those statutes. *Id.* at 17–20. In particular, they allege that the Plaintiff did not claim that he experiences any off-the-job breathing problems. *Id.* at 20.

Fourth, the Plaintiffs claim that even if the Plaintiff pleaded a *prima facie* case of disability discrimination, failure to accommodate, or retaliation, the proposed TAC and the documents incorporated by reference show that BOCES had legitimate reasons for it actions—accommodating him by placing him on paid medical leave—that were not discriminatory or involuntary: (a) the Plaintiff's doctor recommended that Laface be transferred to a dry environment without mold or allergen exposure; (b) BOCES does not have custodial positions that do not involve exposure to allergens such as mold or dust; (c) custodians must work in damp conditions where water is present; (d) the only option BOCES had was to place him on medical leave. *Id.* at 20–23. Fifth, the Defendants assert that the common law fraud claim is futile because the Plaintiff does not even plead reckless conduct on the part of the Defendants, well short of the necessary element of fraudulent intent. *Id.* at 23–25.

Sixth, the Defendants claim that the Plaintiff has "no legal mechanism" to add Diamond as a party. *Id.* at 32. They base this argument on the state law and § 1983 claims being not viable, and the ADA, ADEA, and Rehabilitation Act lacking individual liability. *Id.* The Plaintiff did not file a reply. The Court addresses each of these arguments in turn.

### i.   The NYSHRL and Common Law Fraud Claims

The Court agrees that the NYSHRL and common law claims are futile, based on the Plaintiff's failure to file a notice of claim. Pursuant to state law:

13

> No action or special proceeding, for any cause whatsoever, except as hereinafter provided, . . . involving the rights or interests of any district or any such school shall be prosecuted or maintained against any school district, board of education, board of cooperative educational services, school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four or any officer of a school district, board of education, board of cooperative educational services, or school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim.

N.Y. EDUC. LAW § 3813(1). Section 3813 further provides that no action shall be brought against the above-listed parties, "or against any teacher or member of the supervisory or administrative staff . . . where the alleged tort was committed . . . unless a notice of claim shall have been made and served in with section fifty-e of the general municipal law." N.Y. EDUC. § 3813(2) (citing N.Y. GEN. MUN. LAW § 50-e). The state further allows a court to, "in its discretion, extend the time to serve a notice of claim," although in all cases, "[t]he extension shall not exceed the time limited for the commencement of an action by the claimant against any district or any such school." *Flaherty v. Massapequa Pub. Schs.*, 752 F. Supp. 2d 286, 292 (E.D.N.Y. 2010) (Spatt, *J.*).

This notice of claim requirement applies to causes of action brought under the NYSHRL. *Zambrano-Lamhaouhi v. N.Y.C. Bd. of Educ.*, 866 F. Supp. 2d 147, 175 (E.D.N.Y. 2011). The requirement also applies to claims for fraud. *L.K. v. Sewanhaka Cent. High Sch. Dist.*, No. 14-CV-5730, 2015 WL 12964663, at *15 (E.D.N.Y. July 16, 2015) (collecting cases); *High Vassilev. v. City of New York*, No. 13-Civ.-5385, 2014 WL 3928783, at *3 (S.D.N.Y. Aug. 12, 2014).

With regard to the fraud claim, but not the NYSHRL claim, the Plaintiff in his amended complaint seeks leave under § 3813 to serve a notice of claim out-of-time. ECF 60-2. The

14

Defendants argue that the Court should deny this request because it does not have jurisdiction to entertain such a request. ECF 64 at 9, 15–16.

The Court observes that while New York General Municipal Law § 50-e permits only state courts to grant leave to file a late notice of claim, § 3813 permits any court, including this Court, to grant such leave. *See Flaherty*, 752 F. Supp. 2d at 292; *see also EUA Cogenex Corp. v. N. Rockland Cent. Sch. Dist.*, 124 F. Supp. 2d 861, 864 (S.D.N.Y. 2000). In addition, the Court notes that § 3813 applies to all causes of action asserted against a school district, a school board, or school board members, **and that** § 50-e explicitly applies only to tort claims.

The Plaintiff requested the Court's leave to file a late notice of claim for its fraud claim. Because this claim sounds in tort, § 50-e governs the request. Thus, the Court lacks jurisdiction to grant the Plaintiff's request. *Flaherty*, 752 F. Supp. 2d at 292–93; *see Olsen v. Cty. of Nassau*, No. 05-CV-3623, 2008 WL 4838705, at *3 (E.D.N.Y. Nov. 4, 2008) (Boyle, M.J.) (collecting cases). The Court thus denies the motion to amend with regard to the fraud claim.

The Court has a more involved inquiry concerning the NYSHRL claim. Section 3813's notice of claim requirement applies to schools, school districts, boards of education, and their officers. N.Y. EDUC. § 3813(1). The statute's text precludes the Plaintiff from bringing a NYSHRL cause of action against BOCES or the Board, in that he does not purport to have filed a notice of claim for such a cause of action. *See id.* Neither party addresses whether this section applies to Diamond. However, the Court has already so held, in the November 2018 Order. *See* ECF 25 at 42 ("Based upon this definition, Lutz, McSweney, Diamond, Anderson and Bilka all qualify as school officers.") (internal quotation marks omitted).

The Court's ruling on Diamond in the November 2018 Order constitutes the law of the case. "The law of the case doctrine commands that when a court has ruled on an issue, that

15

decision should generally be adhered to by that court in subsequent stages of the same case unless compelling reasons militate otherwise." *Hernandez v. Sessions*, 731 F. App'x 51, 55 (2d Cir. 2018) (summary order) (citing *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cr. 2009)). Compelling reasons include "an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Johnson*, 564 F.3d at 99–100 (internal quotation marks omitted); *see Sheet Metal, Air, Rail and Transp. Workers Local Union No. 137 v. Frank Torrone & Sons, Inc.*, No. 15-CV-2224, 2018 WL 4771897, at *6 (E.D.N.Y. Oct. 3, 2018).

In this case, the Court has already ruled that Diamond was an officer within the meaning of state education law, making that determination the law of the case. The Plaintiff raises no "compelling reasons" for departing from the Court's prior decision. With Diamond an officer, the § 3813 notice of claim requirement applies to her, along with BOCES and the Board. As the Plaintiff has not filed a notice of claim, the Court denies the motion to amend, **as it pertains to the NYSHRL claim**, on futility grounds.

### ii.   The Unspecified § 1983 Claim

The Court also denies the motion to amend with regard to the Plaintiff's unspecified § 1983 cause of action, again because the claim is futile. The Court denies the motion as to this claim because the Plaintiff fails to plead an underlying constitutional violation, an essential element to a § 1983 claim. *See Albert v. City of New York*, Nos. 17-CV-3957, 17-CV-4315, 2018 WL 5084824, at *7 (E.D.N.Y. Oct. 18, 2018) ("In addition to alleging that the individual defendant acted under color of law, a plaintiff must plead an underlying constitutional violation.") (internal quotation marks omitted); *Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 807–08 (S.D.N.Y. 2011) ("Plaintiff must also, however, allege the existence of an underlying

16

constitutional violation, and it is not clear from the [proposed second amended complaint] what

that constitutional violation is."); *D'Angelo-Fenton v Town of Carmel*, 470 F Supp. 2d 387, 399

(S.D.N.Y. 2007) (dismissing plaintiff's § 1983 supervisor liability clam because plaintiff had not

established any underlying constitutional violation).

      In the Plaintiff's unspecified § 1983 claim, the Plaintiff makes no express reference to the

Constitution. ECF 60-2 at 32–33. He does refer to his already pleaded claims under the ADA,

the Rehabilitation Act, and the NYSHRL. *Id.* Further, as noted by the Defendants, the Plaintiff

pleads his surviving § 1983 free speech claim as his third cause of action in the TAC; thus, it has

no bearing on the seventh case of action. *See id.* at 25–26.

      To the extent that the Plaintiff seeks to invoke the ADA in this § 1983 claim, that claim

fails, because ADA claims are "not actionable under Section 1983." *Eskenazi-McGibney v.*

*Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 236 (E.D.N.Y. 2015) (Spatt, *J.*) (collecting

cases). In addition, the rights established by the Rehabilitation Act may not be enforced through

a § 1983 action. *Costabile v. N.Y.C. Health and Hosps. Corp.*, 951 F.3d 77, 83 (2d Cir. 2020)

("We conclude that the comprehensive remedial scheme of the Rehabilitation Act suggests that

Congress did not intend that § 1983 be an available remedy."). The same is true for any

proposed NYSHRL claim, which would not invoke the Constitution and which, as noted above,

would be futile because of the Plaintiff's failure to file a notice of claim.

      **iii.**    **As to the Disability Discrimination and Failure to Accommodate Claims**
             **under the ADA and the Rehabilitation Act**

      The Defendants base their arguments with regard to the ADA and Rehabilitation Act on

the Plaintiff's failure to demonstrate a disability. Courts analyze identically claims alleged under

the ADA and § 504 of the Rehabilitation Act. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272

(2d Cir. 2003). As to whether a plaintiff suffers from a disability, the Supreme Court compels

17

district courts to follow a three-step process to conclude: "(1) whether plaintiff had an impairment; (2) whether the impairment affected a 'major life activity' within the meaning of the ADA; and (3) whether that major life activity was substantially limited by the impairment." *Mazza v. Bratton*, 108 F. Supp. 2d 167, 173 (E.D.N.Y. 2000) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998)), *Felix v. N.Y.C. Transit Auth.*, 324 F.3d 102, 104 (2d Cir. 2003) (same). The failure to satisfy any of these three prongs mandates dismissal of the Plaintiff's claims. *See Durick v. N.Y.C. Dep't of Educ.*, 202 F. Supp. 3d 277, 289 (E.D.N.Y. 2016); *Sherman v. Cty. of Suffolk*, 71 F. Supp. 3d 332, 344 (E.D.N.Y. 2014) (Spatt, *J.*).

Courts observe that the plaintiff's burden at the motion to dismiss stage is "minimal." *Thompson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *6 (E.D.N.Y. Sept. 21, 2015) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2d Cir. 2008)). For purposes of a disability discrimination claim, a Plaintiff need not provide evidence or allege specific facts establishing every element of the *prima facie* case. *Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 151 (E.D.N.Y. 2005) (citing *Bakeer v. Nippon Cargo Airlines, Co.*, No. 09-CV-3374, 2011 WL 3625103, at *22 (E.D.N.Y. July 25, 2011)).

In the TAC, the Plaintiff claims that he has a physical impairment of a severe mold allergy that impacts his respiratory system and substantially limits his breathing and working. ECF 60-2 at 28, 29. In his Rehabilitation Act claim, he also says that his allergy affects his ability to perform manual tasks. *Id.* at 28.

The Defendants assert that the Plaintiff's claim of a severe mold allergy that impairs his ability to work and breathe is insufficient to plead a *prima facie* showing of a disability under either statute. ECF 64 at 18–19. Their assertions focus on the third prong of the *prima facie*

18

standard in arguing that the Plaintiff's claimed working disability is location-specific—the allergy limits his ability to work at JAC—which does not constitute a disability under the ADA. *Id.* at 19. They also assert that his claims concerning breathing are unavailing, because: (A) his doctor said that he may experience shortness of breath when exposed to allergens in a non-dry environment; and (B) limitations confined to a certain environment cannot constitute disabilities. *Id.* at 19–20. For instance, the Defendants note that the TAC is devoid of allegations that the Plaintiff experiences off-the-job breathing problems. *Id.* at 20. They make no comment on the Plaintiff's claimed limitation on performing manual tasks.

The Court notes that the Plaintiff has met his burden for pleading a *prima facie* case with regard to prongs one and two of showing a disability, to which the Defendants do not object. Taken as true, his allegation of a mold allergy that affects his respiratory system plausibly establishes that the Plaintiff is suffering from an impairment. *See* 29 C.F.R. § 1630.2(h). He also has sufficiently alleged that his impairment has affected his ability to breathe, to work as a custodian at JAC, and to perform manual tasks. All three constitute major life activities under the ADA. 42 U.S.C. § 121012(2)(A).

As to prong three, courts hold that a plaintiff must allege which major life activity or activities their impairment substantially affects in order to clear the Rule 12(b)(6) threshold. *See Ingram v. Nassau Health Care Corp.*, No. 17-CV-5556, 2019 WL 1332857, at *5 (E.D.N.Y. Mar. 25, 2019) ("Plaintiff's complaint makes a single allegation vaguely referencing his 'cardiac disorder,' but does not include any allegations from which the Court could glean which, if any, major life activity is substantially limited by this 'cardiac disorder.' Absent any such allegations, a claim under the ADA cannot persist and must be dismissed.") (internal citation omitted); *see also Dechberry*, 124 F. Supp. 3d at 151 ("Although plaintiff arguably identifies her alleged

disability . . . she does not explain what 'major life activity' is 'substantially limited.'");
*Broderick v. Research Found. of State Univ. of N.Y.*, No. 10-CV-3612, 2010 WL 3173832, at *2
(E.D.N.Y. Aug. 11, 2010) (dismissing ADA claim where plaintiff made conclusory allegation
that she was disabled because of an unspecified hip and lower back injury, and failed to explain
what major life activity this disability had substantially limited).

A Court's inquiry does not end there. Even upon identifying a major life activity, a
Plaintiff must allege facts "that would allow the Court to draw an inference" of a disability's
substantial effect on a major life activity. *See Prisco v. Air Indus. Grp.*, No. 15-CV-7340, 2017
WL 9485663, at *10 (E.D.N.Y. Sept. 1, 2017) (Shields, M.J.) ("Indeed, the complaint fails to
allege how the injuries to his hands impacted his life in any way."), *adopted by*, 2017 WL
4417665 (E.D.N.Y. Sept. 30, 2017); *Cain v. Mandl Coll. of Allied Health,* No. 14-Civ.-1729,
2017 WL 2709743, at *4 (S.D.N.Y. June 22, 2017) (denying leave to amend where the plaintiff
alleged that post-traumatic stress disorder substantially limited four major life activities, because
"[v]ague, conclusory assertions without details on how her condition actually affects a major life
activity are insufficient."); *Kelly v. N.Y. State Office of Mental Health*, 200 F. Supp. 3d 378, 393–
94 (E.D.N.Y. 2016) ("Plaintiff does not provide any further factual support for her purported
sleep problems in the Second Amended Complaint.").

Here, the Court denies the Plaintiff leave to amend the complaint to add claims under the
ADA and the Rehabilitation Act for disability discrimination and failure to accommodate.
Throughout the TAC, the Plaintiff makes conclusory allegations that his mold allergy
substantially limits his ability to work, breathe, and perform manual tasks. However, he does not
expand on those conclusory assertions. *See* ECF 60-2 at 11 ("[H]e developed a physiological
disorder in the form of severe allergies to mold, affecting his respiratory body system,

Case 2:18-cv-01314-ADS-AKT   Document 79   Filed 05/14/20   Page 21 of 27 PageID #: 2101

substantially limiting major life activities of breathing and working."), 28 ("Plaintiff is an individual with a disability under Section 504, as a person with a physical impairment of severe mold allergy which substantially limits one or more major life activities in the form of breathing and working and performing manual tasks.").

In naming three major life activities, the Plaintiff has supplied a necessary element for surviving the Rule 12(b)(6) standard and stating a *prima facie* case . *See Ingram*, 2019 WL 1332857, at *5 ("Absent any such allegations, a claim under the ADA cannot persist and must be dismissed."); *Horsham v Fresh Direct*, 136 F. Supp. 3d 253, 263 (E.D.N.Y. 2015); *Dechberry*, 124 F. Supp. 3d at 151. However, the Plaintiff's numerous conclusory statements regarding his disability do not expand on how the disability affects these major life activities. *See Eisenberg v. Cty. of Nassau*, No. 18-CV-1742, 2019 WL 4247283, at *3 (E.D.N.Y. Aug. 30, 2019) ("Plaintiff fails to allege any facts showing that the breast cancer and surgeries impaired her ability to perform a major life activity."); *Cain,* 2017 WL 2709743, at *4. However, this naming is not sufficient to plead a *prima facie* case.

Courts have yet to establish the extent to which a Plaintiff must allege that his claim that an impairment substantially limits a major life activity. *See Campbell v. N.Y. Transit Auth.*, No. 11-CV-2827, 2015 WL 7455842, at *10 n.7 (E.D.N.Y. Nov. 23, 2015) ("[I]t is unclear what duration or scale of limitations on her ability to work Plaintiff would need to show to prove she was disabled for that period.") (citing *Missick v. City of New York*, 707 F. Supp. 2d 336, 353 n.9 (E.D.N.Y. 2010) (holding that a doctor's note stating plaintiff should only do "limited work" and not get "stressed out" was insufficient to show a disability)). Without ruling on the scope of that additional requirement, the Court rules that the Plaintiff fails to meet it here. The Plaintiff made a dozen nearly identical short references to the major life activities limited by his mold allergy,

without any explanation as to how he was so limited. *See Kelly*, 200 F. Supp. 3d at 393–94; *see also Wiltz v. N.Y. Univ.*, No. 18-CV-123, 2019 WL 721658, at *8 n.20 (S.D.N.Y. Feb. 1, 2019) (noting that courts broadly apply the term "substantially limits," but that "[n]evertheless, Plaintiff still must plead sufficient facts to raise a right to relief above the speculative level") (internal quotation marks omitted).

### iv.    As to Supplementing the ADA Retaliation Claim

As to ADA retaliation, the Plaintiff seeks to embellish that claim by adding allegations that the Defendants retaliated against him by failing to provide him a reasonable accommodation for his mold allergy by transferring him to another BOCES location, either the Bixhorn Center— where he had previously worked before his involuntary transfer—or the Tecumseh Elementary School. ECF 60-2 at 11–20. He also said that **his** correspondence with Diamond revealed that BOCES was both failing to resolve the mold problem at JAC, and disregarding the correspondence from the Plaintiff's doctor about his allergy. *Id.* He adds that BOCES has refused and continues to refuse his return to work by transferring him to a mold-free environment, despite his doctor's assertions that he is able to work in such a location. *Id.* at 17–20.

The Defendants assert that the new allegations in the ADA retaliation claim are futile because the Defendants had legitimate, non-retaliatory reasons for its decision to accommodate Laface with a paid medical leave, rather than grant his request for a transfer to a new building. ECF 64 at 20. They argue that based on the opinion of the Plaintiff's doctor, the Plaintiff cannot be exposed to his allergens—mold, dust, cockroaches—without creating a significant risk of substantial harm to himself, and that he must instead work in a dry workplace. *Id.* However, BOCES does not have any facility that would prevent the Plaintiff's exposure to those allergens,

22

because "custodians must work in damp conditions where water is present, such as restroom, and must use water to perform many custodial tasks." *Id.* at 20–21. They also claim that they had a non-retaliatory reason for barring his return to work until his doctor confirms that his dust allergy does no create a significant risk of harm, and he does not require a dry workplace, because the ADA allows an employer to make inquiries into an employee's medical condition where the inquiry is job-related and consistent with business necessity. *Id.* at 21–23.

> To succeed in an ADA retaliation claim, a plaintiff must prove that:
>
> (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.

*Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 148–49 (2d Cir. 2002). To survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) [his employer] discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (internal citations omitted).

Courts analyze ADA retaliation claims under a burden shifting analysis. *Shepheard v. N.Y.C.. Corr. Dep't*, 360 F. App'x 249, 251 (2d Cir. 2010) (summary order). "First, the plaintiff must make a prima facie showing of retaliation; then, the burden shifts to the employer to articulate a legitimate, non-[retaliatory] reason for the adverse action; lastly, the plaintiff must provide evidence demonstrating that the proffered reason is merely pretext for [retaliation]." *Id.*; *see Welch v. United Parcel Serv., Inc.*, 871 F. Supp. 2d 164, 181 (E.D.N.Y. 2012) (Spatt, *J.*).

In the TAC, the Plaintiff claims that his requests for a reasonable accommodation for his mold allergy constitutes protected activity. ECF 60-2 at 3. Seeking a reasonable accommodation for a disability does amount to protected activity. *Rieger v. Orlor, Inc.*, 427 F.

Supp. 2d 105, 120 (D. Conn 2006); *see also* ECF 25 at 18. Although, as noted above, the Plaintiff has not pleaded a disability within the meaning of the ADA, this does not preclude the Plaintiff's requests from being considered a protected activity, because, as this Court held in the November 2018 Opinion regarding a different claimed disability, the parties do not dispute that the Plaintiff was sincere in his belief that he was disabled and that his request was in good faith. *See* ECF 25 at 19 (citing *Rieger*, 427 F. Supp. 2d at 120, *Munck v. New Haven Sav. Bank*, 251 F. Supp. 2d 1078, 1087 (D. Conn. 2003)).

The Defendants raise no assertions as to whether the Plaintiff suffered an adverse employment action. The Plaintiff asserts that he suffered two: (1) when BOCES placed him on involuntary ADA leave; and (2) when BOCES intentionally kept him from performing the essential functions of his job by depriving him of a mold-free environment. ECF 60-2 at 31.

An adverse employment action is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (internal citations omitted). Placement on involuntary medical leave can be an adverse employment action. *Waldo v. N.Y.C. Health and Hosps. Corp.*, No 06-CV-2614, 2009 WL 2777003, at *3 (E.D.N.Y. Aug. 31, 2009); *Lara v. City of New York*, No. 97-Civ.-7663, 1999 WL 459803, at *4 (S.D.N.Y. June 29, 1999). Requiring a doctor's note to return from medical leave "is not an adverse employment action, even under the more lenient standard applicable to retaliation claims." *Wagner v. Cty. of Nassau*, No. 11-CV-1613, 2014 WL 3489747, at *9 (E.D.N.Y. July 11, 2014); *Blake v. Potter*, No. 03-CV-733, 2007 WL 2815637, at *9 (S.D.N.Y. Sept. 24, 2007). However, involuntary leave or unjustified charging of sick days can be an adverse employment action. *Wagner*, 2014 WL 3489747, at *9; *Rolon v. Ward*, No. 05-Civ.-0168, 2008 WL 4700705, at *22 (S.D.N.Y. Oct. 24, 2008).

As to causation, the Defendants again make no arguments, and indeed, they concede n their opposition that they placed him on medical leave in response his request for a transfer, and for keeping him on medical leave, despite his asking to return to work. ECF 64 at 20–21. This satisfies the causation requirement **that** the alleged retaliation was a but-for cause of the adverse action, and not simply a substantial or motivating factor in an employer's decision. *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 2526, 186 L. Ed. 2d 503 (2013)).

The Plaintiff has thus pleaded a *prima facie* claim of ADA retaliation. The Defendants seek to dismiss this claim on futility grounds by invoking the business necessity exception. The ADA permits an employer to require a medical examination and to make inquiries as to an employee's medical condition where that examination or inquiry "'is shown to be job-related and consistent with business necessity.'" *Lopez v. Hollisco Owners Corp.*, 147 F. Supp. 3d 71, 77 (E.D.N.Y. 2015) (quoting 42 U.S.C. § 12112(d)(4)(A)).

In support of its business necessity argument, the Defendants cite several cases from this Circuit. However, all of those cases contain either rulings on motions for summary judgment or appeals from rulings on summary judgment motions. *See id.*; *see also Gajda v. Manhattan & Bronx Surface Transit Operating Auth.*, 396 F.3d 187, 188 (2d Cir. 2005); *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 98 (2d Cir. 2003); *Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360, 372 (S.D.N.Y. 2018). They provide no support for the notion that the Court may rule on a business necessity defense at the Rule 12(b)(6) stage of proceedings. While in general, a party may bring an affirmative defense in a pre-answer motion to dismiss under Rule 12(b)(6), without filing a summary judgment motion, *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67,

74 (2d Cir. 1998), *cert. denied*, 525 U.S. 1103, 119 S. Ct. 868, 142 L. Ed. 2d 770 (1999), the Defendants make no such allegation here.

The Second Circuit has yet to address this question of whether a court may grant a motion to dismiss a claim under Rule 12(b)(6) based on a defense of business necessity.  A review of the case law from other Circuits strongly suggests that it would be improper for the Court to rule on a business necessity defense at this time. *See Rivero v. Bd. of Regents of Univ. of N.M.*, 950 F.3d 754, 759 (10th Cir. 2020); *Taylor v. City of Shreveport*, 798 F.3d 276, 286–87 (5th Cir. 2015) ("Business necessity is an affirmative defense, so it is generally inappropriate to dismiss a medical inquiry/examination claim at the 12(b)(6) stage on business necessity grounds."); *Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 718 (E.D.La. 2013) ("Thus, while it remains possible that the business necessity exception may ultimately apply in this case, the Court declines, at [the 12(b)(6)] stage, to dismiss Plaintiff's ADA claim under section 12112(d)(4)(A) on account of the business necessity exception.").

For similar reasons, the Court declines to apply the business necessity defense here.  Accordingly, the Court grants the Plaintiff's motion to the extent he seeks leave to amend his ADA rehabilitation claim to include allegations concerning his mold allergy.

### v.    As to Adding Diamond as a Defendant

The Court denies the Plaintiff's request to add Diamond as a party in the action.  As noted above, the Court has denied the Plaintiff leave to amend with regard to the NYSHRL, common law fraud, and new § 1983 claims.  In addition, there is no individual liability under the ADA, the Rehabilitation Act, or the ADEA. *Perros v. Cty. of Nassau*, 238 F. Supp. 3d 395, 402 n.3 (E.D.N.Y. 2017); *Falcon v. City University of N.Y.*, No. 15-CV-3421, 2016 WL 3920223, at

26

*7 (E.D.N.Y. July 15, 2016); *Doner-Hendrick v. N.Y. Inst. of Tech.*, No. 11-Civ.-121, 2011 WL 2652460, at *8 (S.D.N.Y. July 6, 2011).

### A. **The Motion to Strike**

The Court denies as moot the Defendants' motion to strike the second amended complaint. That motion is moot because the Court has granted in part the Plaintiff's motion to amend. *See Jean-Laurent*, 461 F. App'x at 23; *Dluhos*, 162 F.3d at 68.

### I.  **CONCLUSION**

For the foregoing reasons, the Court grants in part the Plaintiff's motion to amend with regard to his request for leave to amend his ADA retaliation claim. The Court denies the motion with regard to the remainder of the Plaintiff's proposed claims. It also denies as moot the Defendants' motion to strike. The Plaintiff is directed to file an amended complaint consistent with this Decision and Order within **60** days of the date of this order.

It is **SO ORDERED.**


/s/ Arthur D. Spatt

Arthur D. Spatt, U.S.D.J.

May 14, 2020

Date